FILED

UNITED STATES DISTRICT COURT 2003 NOV 17 P 12: 36

DISTRICT OF CONNECTICUT   US DISTRICT COURT
BRIDGEPORT CT

| | | |
|---|---|---|
| MAUREEN ALLEN, ET AL., | : | CIVIL NO. 3:02CV1370 (AHN)(HBF) |
| v. | : | |
| JOHN J. ARMSTRONG, ET AL., | : | NOVEMBER 14, 2003 |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

The defendants file this reply memorandum of law to address the several assertions made in the plaintiffs' October 9, 2003 memorandum in opposition to the pending motion to dismiss. As shown below: (1) the plaintiff has completely failed to state any claim upon which relief can be granted as to seventeen of the individually named defendants; (2) as a matter of law, and consistent with the rulings of this very court, the defendants are immune from the plaintiffs' claim for negligence, arising under common law; and (3) the individual administrative grievances of a single employee are patently insufficient to satisfy the exhaustion requirements under Title VII for all remaining plaintiffs.

### I. The Complaint Fails To Allege The Personal Involvement Of Seventeen Defendants

In their memorandum in opposition to the pending motion to dismiss, the plaintiffs assert that they have alleged sufficient facts to establish the personal involvement of all defendants, drawing the court's particular attention to several overly broad and unspecific allegations in their Third Amended Complaint, such as: each defendant "knows about" the use of pornographic materials in the Department of Correction; "the defendants know about" the practice of who will have sex with recruits; sexually suggestive and harassing conduct "has been made known to their

supervisors, including the defendants"; "the defendants" have known of incidents of sexual harassment and retaliation for many years; and that the defendants participated in, encouraged and failed to eliminate such behavior. See Complaint at ¶¶ 397, 399, 405, 462, 464, 469 and 516.[1] These allegations form the basis for the plaintiffs' assertion that all defendants have been personally involved in the actions giving rise to their claims.

What the plaintiff has not, and in light of the limitations of their complaint, cannot argue is that any of the misconduct identified by the plaintiffs and alleged to have been committed uniformly by all defendants in these absurdly conclusory paragraphs, was a proximate cause of the harm ostensibly suffered by each plaintiff. The operative complaint does not connect any of the aforementioned allegations to the actual harms suffered by the individual plaintiffs. Rather than settle for the limited review of the complaint offered by the plaintiffs in their opposition memorandum, it is the defendants who have reviewed the entire complaint as a whole, drawing the inescapable conclusion that at least seventeen individuals named as defendants in this action lack personal involvement in the acts causing harm to the plaintiffs. This fact is best understood by reviewing, as the defendants have done, the factual allegations surrounding the claims of each individual plaintiff. Nowhere in any of the fourteen separate sections, spanning ninety-nine pages of text, do the plaintiffs even allege that these seventeen individual defendants knew of the harassment giving rise to the individual claims.[2]

---

[1] These are the paragraphs the plaintiffs have chosen to demonstrate they have alleged the personal involvement of all the defendants. See Pltf's 10/9/03 Memo. at pp. 4-5.

[2] Inexplicably, plaintiffs seek to support their assertions by noting that the defendants have not claimed lack of personal involvement in the Title VII claims or the common law tort claims. That is because the individual defendants are not parties to the Title VII claims; Title VII does not permit claims against individuals since "an employer is presumed to bear absolute liability in cases where, as here, the harassment is perpetrated by the victim's supervisor . . . ." Terry v.

2

When the plaintiffs' complaint is read with the arguments asserted in their opposition memorandum in mind, it is clear that the seventeen defendants[3] captured in a few vague and conclusory allegations are named solely because they are men. It is striking, and ironic, that the plaintiffs have not named any female wardens or deputy wardens as defendants under the same tenuous theory. In any event, the fact that the plaintiffs have failed to connect any of the conduct of these seventeen men to their own specific circumstances warrants dismissal of all claims against these defendants.

## II. The Plaintiffs' Negligence Claims Must Be Dismissed

For more than thirty years, the federal courts in this circuit have held that they lack jurisdiction over negligence claims asserted against employees of the State of Connecticut. Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969); Scittarelli v. Manson, 447 F. Supp. 279 (D. Conn. 1978). This court has specifically held that negligent infliction of emotional distress claims are barred in this district, and that they must be raised in the Connecticut claims commission pursuant to Conn. Gen. Stat. § 4-165. Poe v. Pearl, 1997 U.S. LEXIS 23370 (D. Conn. 1997)(Nevas, J.), *rev'd on other grounds sub nom* Poe v. Leonard, 282 F. 3d 123 (2d Cir. 2002). This court has dismissed negligence claims arising from a police investigation for the very same reason. Cartier v. Lussier, 1991 U.S. Dist. LEXIS 14105 (D. Conn. 1991)(Nevas, J.). See also, Torrence v. Pelkey, 164 F. Supp. 2d , 264 (D. Conn. 2001)(Fitzsimmons, M.J.).

---

Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003). Moreover, and as shown below, this court lacks subject matter jurisdiction over the common law negligence claims.

[3] These seventeen defendants are all male wardens or deputy wardens, and there are no allegations that any of these defendants even directly supervised the plaintiffs or the employees alleged to have harassed them. These defendants are: Hector Rodriguez, Michael Donahue, Remi Acosta, David Strange, Dennis Jones, James Dzurenda, Robert Gillis, John Tarascio,

3

Indeed, there is not one recorded decision where a court in this district, or any state superior court, has found it has jurisdiction to consider negligence claims against a state employee absent a grant of permission to sue from the claims commissioner.

In an effort to avoid the clear, and long-standing, statutory bar to their negligence claims, the plaintiffs assert that a recent Connecticut Supreme Court decision regarding indemnification of state employees somehow reverses nearly four decades of court decisions. This argument completely misses the mark. In <u>Flanagan v. Blumenthal</u>, 265 Conn. 250 (2003), the court reviewed a decision by the Attorney General to refuse a former judge's request for defense and indemnification arising from a sexual harassment claim asserted against the judge by a subordinate. At issue, therefore, was whether the broad grant of discretion given to the Attorney General to determine representation of state employees is "appropriate", as set forth in Conn. Gen. Stat. § 5-141d, constitutes a waiver of the state's sovereign immunity. Following its decision in <u>St. George v. Gordon</u>, 264 Conn. 538 (2003), the Supreme Court again concluded in <u>Flanagan</u> that § 5-141d does not waive the state's sovereign immunity from suit.

Repeating the mistakes of the plaintiffs in <u>Flanagan</u> and <u>St. George</u>, the present plaintiffs fail to acknowledge that, under Connecticut law, there is a distinction between immunity from suit and immunity from liability, and more critically, the mere fact that a statute waives the state's immunity from liability does not, as a matter of course, waive the state's immunity from suit. As illustrated by the facts of the present case, it is clear that the state has waived its immunity from liability for the negligent acts of its employees, while at the same time limited the manner in which such claims are asserted by requiring individuals complaining of negligence to

---

David Marcial, Giovanni Gomez, Nelvin Levester, curtis Boyle, Christopher Dion, Peter

filing an administrative complaint in the claims commission. St. George, 264 Conn. at 538; Martinez v. Dept. of Public Safety, 263 Conn. 74, 84 (2003). The fact that the state has further passed legislation to address when the Attorney General should defend and indemnify such claims may further waive the state's immunity from liability does not result in a waiver of suit that would allow the plaintiffs to bring negligence claims against individual state employees in a district court.[4]

Clearly the plaintiffs' argument wholly misconstrues the interrelated state interests discussed in Flanagan and St. George. On the one hand, it is clear that Connecticut provides statutory protection for its state employees who are accused of negligence, and in the very same statute providing this protection, allows persons harmed by such negligence to pursue a claim for damages against the state through the filing of a notice with the claims commission. Along with this process, and running to infinity on a parallel track, is the authority of the Attorney General, pursuant to § 5-141d, to determine that representation and indemnification of a state employee is "inappropriate" for a variety of reasons. At no point do these two statutes intersect, since the consequence of a grant of permission to sue for the negligence of a state employee allows solely for the bringing of an action "against the state as party defendant" and may only be brought in the superior court. See Conn. Gen. Stat. § 4-160(d). Because only the state is a party to a negligence claim properly presented to the claims commissioner, the Attorney General would

---

Murphy, Anthony Lorenzano, Raymond Agrinzone and Richard Flodquist.

[4] It should be noted that the Supreme Court in Flanagan did not reach the question whether an employee who is refused defense and indemnification by the Attorney General may even bring a claim in the claims commission. See Flanagan, 265 Conn. at 358, n. 11.

never face the decision whether it would be "appropriate" to represent a state employee in such an action.

By contrast, the claims advanced by the plaintiffs in this action are not at all akin to negligence claims. As stated by the United States Supreme Court, "[s]exual harassment under Title VII presupposes intentional conduct." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 756 (1998). Critically, virtually every defendant accused of having negligently inflicted emotional distress upon the plaintiffs is similarly accused of having committed sexual harassment in violation of Title VII and 42 U.S.C. § 1983; plaintiffs make virtually no effort to distinguish among the several possible levels of culpability of the persons they have chosen to name as defendants. The plaintiffs should not be rewarded for their lack of clarity, if not blatant obfuscation, by disregarding the sovereign immunity of the state and its employees. Rather, the long-standing precedents of this court should be respected, and the negligence claims should be dismissed.

### III. The "Single Filing Rule" Does Not Permit Title VII Claims By Individual Plaintiffs Who Have Failed To Exhaust Their Administrative Remedies.

In their opposition memorandum, the plaintiffs argue that the "single filing rule" adopted by the Second Circuit in Snell v. Suffolk County, 782 F.2d 1094 (2d Cir. 1986), and Tolliver v. Xerox Corp., 918 F.2d 1052 (2d Cir. 1990), excuses the failure of all but one plaintiff to file an administrative charge and obtain permission to sue under Title VII.

It is impossible in the space allotted to list every example why the one administrative charge filed by a plaintiff in this case is patently inadequate to meet the single filing rule. Even a cursory examination of the charge in question (which is appended to plaintiffs' opposition memorandum) demonstrates that the individual grievances of the one plaintiff do not begin to

6

address the many individualized complaints of the remaining thirteen plaintiffs. The one plaintiff who filed an administrative charge, Danielle Locas, complains that she does not have access to a "port o potty" when walking a perimeter guard post, that a specific inmate was "stalking" her, and that she was retaliated against for enforcing policies prohibiting inmates from covering their cell doors with towels. While Ms. Locas refers to her employer generally as the "respondent" in her administrative charge, it is clear that her complaints are addressed to the actions of one supervisor, Captain Kelly. See July 1, 2002 Administrative Complaint (Ex. B to plaintiffs' opposition memorandum) and Rebuttal to Department of Correction Reply to administrative charge (Ex. C to plaintiffs' opposition memorandum).

Not only does the individualized nature of this administrative complaint underscore the very separate and distinct discrimination claims advanced by each of the fourteen plaintiffs to this action, but with respect to plaintiffs' invocation of the "single filing rule", the administrative charge at issue serves to distinguish these plaintiffs from the class representatives in <u>Snell</u> and <u>Tolliver</u>. In <u>Snell</u>, the Title VII plaintiffs, alleging racial discrimination and a race-based hostile work environment, all worked in the same facility for the same supervisors. Similarly, in <u>Tolliver</u>, the plaintiffs, although assigned to several different office locations, claimed they were the subject of the same discriminatory reduction in force policies promulgated by corporate officials. By contrast, the incidents of sexual harassment allegedly experienced by the plaintiffs in this case are as unique as any individual circumstance can be; each of the fourteen plaintiffs make their own individual claims of discrimination and harassment, save for two plaintiffs who allege limited access to bathrooms while on duty inside their correctional facility.

Moreover, the simple filing of an administrative charge by one plaintiff does not suffice to excuse the other plaintiffs of their obligation to file an administrative charge. The EEOC charge must "provide notice of the class nature of the claim" and the plaintiffs "must have been able to file a timely charge on the date that the original individual did so." Clark v. United Technologies Corp., 1997 U.S.Dist. LEXIS 14148 (D.Conn. 1997)(appended hereto), *citing* Tolliver, 918 F.2d at 1057. Here, the single EEOC charge clearly does not make claims on behalf of the entire class, since they are limited to one correctional officer's difficulty in obtaining what she believed to be adequate bathroom breaks and her own sense of being retaliated against for complaining about her inadequate access to bathroom facilities. By contrast, the EEOC charge at issue in Clark stated on its face that it was filed on behalf of all similarly situated employees who were terminated unlawfully as part of a corporate reduction in force. See Clark, slip op. at 7.

Additionally, the plaintiffs have failed to demonstrate that each could have brought her own timely administrative charge. A review of the plaintiffs' complaint establishes that four of the plaintiffs (Allen, Godwin, Newman and Jane Doe One) experienced allegedly harassing behavior that terminated more than 300 days prior to the filing of the one administrative charge on July 1, 2002. As for the remaining plaintiffs who allege more timely incidents of misconduct, none have made allegations of harassment that mirror the allegations in the one EEOC charge. Misinterpreting the "single filing rule" to include the plaintiffs in this action, without any demonstrable nexus between the allegations in the one EEOC charge and the claims of the remaining plaintiffs, would eviscerate the exhaustion requirements imposed by Title VII.

**CONCLUSION**

Wherefore, for the foregoing reasons, as well as those set forth in the defendants' September 24, 2003 memorandum, the defendants' motion to dismiss should be granted.

DEFENDANTS:
JOHN J. ARMSTRONG, ET AL.,

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY: *[signature]*
Terrence M. O'Neill
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct10835
E-Mail: terrence.oneill@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 14th day of November 2003:

Antonio Ponvert III, Esq.
Koskoff, Koskoff & Bieder
350 Fairfield Ave.
Bridgeport, CT 06604

David N. Rosen, Esq.
Rosen & Dolan
400 Orange Street
New Haven, CT 06511

Terrence M. O'Neill
Assistant Attorney General

ROBERT CLARK, DENNIS J. FRENETTE, SYLVIA GRAHAM, WILLIAM LaBRUNA, ROLAND A. THERRIEN, DANIEL URIANO, and FRANCINE ZURELL, plaintiffs,-against- UNITED TECHNOLOGIES CORPORATION, PRATT & WHITNEY DIVISION, defendant.

CIVIL ACTION NO. 3:97 CV 0438 (GLG)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

1997 U.S. Dist. LEXIS 14148

September 3, 1997, Decided

NOTICE:

[*1] FOR ELECTRONIC PUBLICATION ONLY

DISPOSITION: Plaintiffs' motion for summary judgment (Document # 13) GRANTED on Count Three of complaint and on defendant's counterclaim for breach of Release agreements. Defendant's motion for summary judgment (Document # 8) DENIED.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff employees filed an action against defendant employer for relief from their termination by employer in violation of the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq. (ADEA), and claimed that releases and waivers signed by employees violated the Older Worker Benefit Protection Act (OWBPA), 29 U.S.C.S. §§ 626(f)(1)(F)(ii) and 626(f)(1)(H). Employer counterclaimed that employees breached the releases by filing suit.

OVERVIEW: Employees were laid off by employer in an effort to cut back on expenses. Employees were offered a better severance package if they signed a release and waiver of all claims against employer than if they did not sign a release, and were given 21 days to decide if they would sign the release. One of employees filed a complaint with the Equal Employment Opportunity Commission alleging that the termination violated age discrimination laws. The employee also filed an action against employer and sought class certification. When certification was denied, the other employees piggybacked onto the lawsuit, even though employees retained the consideration gained by signing the releases. Employer filed a counterclaim against employees and claimed that their action violated the terms of the releases. Both parties filed motions for summary judgment.

OUTCOME: The court granted employees' motion and denied employer's motion because employees were not given the required 45 days to consider the releases and the releases did not meet the requirements of OWBPA, the releases were unenforceable, employees did not ratify the releases by retaining the consideration, and employees did not need to return the consideration to pursue their ADEA claims.

CORE TERMS: summary judgment, statute of limitations, severance, termination, lawsuit, counterclaim, package, class action, age discrimination, involuntary, tolling, employment termination, administrative charge, legislative history, civil action, single-filing, class certification, unenforceable, ratified, exit, matter of law, commencement, reduction, encompass, enacting, tolled, opt-in, notice, waive, opt

LexisNexis (TM) HEADNOTES - Core Concepts:

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN1] Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

Civil Procedure: Summary Judgment: Summary Judgment Standard
[HN2] In determining whether or not the record presents genuine issue for review, the court must resolve all factual disputes in favor of the non-moving party.

Civil Procedure: Summary Judgment: Summary Judgment Standard

[HN3] The mere existence of some factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment.

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
[HN4] Under the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., an aggrieved employee must file a charge of unlawful discrimination with the Equal Employment Opportunity Commission (EEOC) within 300 days after the alleged unlawful practice occurred. The individual then must wait 60 days after the filing the charge to file a civil action. Any civil action must be filed within 90 days of receiving notice of the right to sue from the EEOC. In addition, class actions are explicitly authorized by 29 U.S.C.S. § 626(b), which explicitly adopts the opt-in class mechanism of the Fair Labor Standards Act of 1938, 29 U.S.C.S. § 216(b). Under this mechanism, a person may maintain an action on behalf of himself and other employees similarly situated. No person can become a party plaintiff to such a civil class action, however, unless that person affirmatively opts into the class by giving written filed consent.

Labor & Employment Law: Discrimination: Title VII
[HN5] Section 6 of the Portal-to-Portal Pay Act, 29 U.S.C.S. §§ 251-262, states that civil actions must be filed within two years of the alleged unlawful practice for non-willful violations and three years for willful violations.

Labor & Employment Law: U.S. Equal Employment Opportunity Commission: Enforcement
[HN6] The filing of an administrative charge with the Equal Employment Opportunity Commission (EEOC) ordinarily is a jurisdictional prerequisite to filing a civil action in federal court. However, under limited circumstances, plaintiffs who have not done so are permitted to piggyback onto the suit of someone else who has filed an administrative charge alleging class-wide discrimination. This concept, also known as the single-filing rule, allows other plaintiffs covered by that charge, who could have filed their own timely charge on that date, to rely on the EEOC charge of the single-filing plaintiff.

Labor & Employment Law: U.S. Equal Employment Opportunity Commission: Enforcement
[HN7] To properly piggyback a claim, there must be an Equal Employment Opportunity Commission charge that provides notice of the class nature of the claim and the plaintiffs relying on the single-filing rule must have been able to file a timely charge on the date that the original individual did so.

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
[HN8] The Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., adopts by reference certain enforcement provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.S. § 216(b), but the remedial provisions of the two statutes are not identical.

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
[HN9] In enacting the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., Congress exhibited both a detailed knowledge of the Fair Labor Standards Act of 1938, 29 U.S.C.S. § 216(b), provisions and their judicial interpretation and a willingness to depart from those provision regarded as undesirable or inappropriate for incorporation.

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
[HN10] The commencement of an Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq., class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
[HN11] 29 U.S.C.S. § 626 specifically limits the manner in which an employee may waive the protections afforded to him or her under federal law. An individual may not waive any right or claim unless the waiver is knowing and voluntary. Knowing and voluntary is defined such that a waiver may not be considered knowing and voluntary unless at a minimum certain statutory factors are either satisfied or inapplicable.

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
[HN12] See 29 U.S.C.S. § 626(f)(1)(F)(ii).

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
[HN13] See 29 U.S.C.S. § 626(f)(1)(H).

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
[HN14] The requirements of both 29 U.S.C.S. §§ 626(f)(1)(F)(ii) and 626(f)(1)(H) are triggered where a waiver of an employee's rights and claims is requested in connection with an exit incentive program or other employment termination program offered to a groups or class of employees.

Labor & Employment Law: Discrimination: Age Discrimination: Coverage & Definitions
[HN15] It is clear from the legislative history that Congress intended the requirements of 29 U.S.C.S. §§ 626(f)(1)(F)(ii) and 626(f)(1)(H) to apply to both voluntary and involuntary termination programs.

Labor & Employment Law: Discrimination: Age Discrimination: Remedies
[HN16] Common law doctrines, such as ratification, therefore, do not apply to Age Discrimination in Employment Act, 29 U.S.C.S. § 621 et seq. (ADEA), releases that fail to comply with the Older Worker Benefit Protection Act, 29 U.S.C.S. § 626(f)(1)(F)(ii) and (H), unless a waiver contract takes the form required by the statute, an employer and employee cannot contract to waive the ADEA provisions.

COUNSEL: For ROBERT CLARK, DENNIS J. FRENETTE, SYLVIA GRAHAM, WILLIAM LABRUNA, ROLAND A. THIERRIEN, DANIEL URIANO, FRANCINE ZURELL, plaintiffs: Markus Landon Penzel, Garrison, Phelan, Levin-Epstein & Penzel, New Haven, CT USA.

For UNITED TECHNOLOGIES CORP, PRATT & WHITNEY DIVISION, defendant: Albert Zakarian, Glenn William Dowd, Victoria Woodin Chavey, Elizabeth Ann Alquist, Day, Berry & Howard, Hartford, CT USA.

For UNITED TECHNOLOGIES CORP, PRATT & WHITNEY DIVISION, counter-claimant: Albert Zakarian, Glenn William Dowd, Victoria Woodin Chavey, Day, Berry & Howard, Hartford, CT USA.

For ROBERT CLARK, DENNIS J. FRENETTE, SYLVIA GRAHAM, WILLIAM LABRUNA, ROLAND A. THIERRIEN, DANIEL URIANO, FRANCINE ZURELL, counter-defendants: Markus Landon Penzel, Garrison, Phelan, Levin-Epstein & Penzel, New Haven, CT USA.

JUDGES: Gerard L. Goettel, U.S.D.J.

OPINIONBY: Gerard L. Goettel

OPINION: MEMORANDUM DECISION

Plaintiffs Robert Clark, Dennis[*2] J. Frenette, Sylvia Graham, William LaBruna, Roland A. Therrien, David Uriano, and Francine Zurell bring this suit against defendant United Technologies Corporation, Pratt & Whitney Division ("Pratt & Whitney") seeking declaratory, injunctive, and monetary relief. They claim that their discharge resulting from a reduction in force violates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. (Counts One and Two). Plaintiffs also claim that the release and waiver of claims ("the Release") signed by each of them in exchange for additional severance benefits violates the Older Worker Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f)(1)(F)(ii) and (H) (Count Three). They seek a declaratory judgment that they may proceed with their age discrimination claims, despite the fact that they signed the Releases and have retained those benefits. Defendant counterclaims that plaintiffs breached the Release agreements.

There is no dispute regarding the material, operative facts and both parties move for summary judgment. Plaintiffs move for summary judgment on the Third Count of their complaint, alleging that the Releases violate the OWBPA, and on defendant's counterclaim[*3] for breach of the Release agreements (Document # 13). Defendant moves for summary judgment on all counts of plaintiffs' complaint and on its counterclaim (Document # 8). For the following reasons, plaintiffs' motion is GRANTED. Consequently, defendant's motion is DENIED.

FACTS

Each plaintiff worked for defendant Pratt & Whitney in the Finance area until he or she was laid off in 1993. At the time of the discharge, each plaintiff was at least 40 years old. Plaintiffs were terminated along with well over one hundred other employees in the Human Resources, Management Systems, and Finance Departments of defendant. Such terminations, occurring at varying times over the course of a year, were, according to defendant, a necessary program to reduce costs and remain competitive.

After being discharged, each plaintiff signed a release and waiver of all claims, including those arising under the ADEA, against Pratt & Whitney. n1 Each plaintiff was given 21 days to consider accepting the package. In exchange for signing this Release, each plaintiff received a severance package that was more generous than he or she would have received without having signed the Release. To date, none of the[*4] plaintiffs has returned the consideration received from Pratt & Whitney in exchange for signing the Release.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n1 The Releases in question provide that:

If you file a lawsuit, charge, complaint, or other claims asserting any claim or demand which is within the scope of the Release and Waiver, the Company, whether or not your claim is valid, shall be entitled to cancel any and all future obligations of this Agreement, and recoup the value of all payments and benefits paid hereunder, together with the Company's costs and attorney's fees.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

On November 9, 1993, Raymond J. Elliot, who also had been laid off from Pratt & Whitney in 1993, filed an age discrimination charge with the EEOC. Elliot had worked in defendant's Human Resources area and was 42 years of age at the time of the layoff. Elliot sought to bring the charge on behalf of himself and all similarly situated individuals. The represented class consisted of non-bargaining unit employees of Pratt & Whitney whose employment had been terminated on[*5] or after January 26, 1993 as part of Pratt & Whitney's reduction in force, who were at least 40 years old at the time of discharge, and who signed a release and waiver of claims that they now contend is not valid and enforceable under the ADEA as amended by the OWBPA.

On September 15, 1994, Elliot filed a lawsuit in the District of Connecticut (Case No. 3:94 CV 1577(AVC)), alleging that Pratt & Whitney had discriminated against him and others on the basis of age. He sought to certify a class of former Pratt & Whitney employees similar to that class identified in the administrative charge.

None of the instant plaintiffs filed an administrative charge of age discrimination with either the Equal Employment Opportunities Commission ("EEOC") or the Connecticut Commission on Human Rights and Opportunities ("CCHRO"). However, each plaintiff filed a "consent to suit" in the Elliot matter, indicating that he or she wished to be a part of the lawsuit. n2 The motion for class certification in the Elliot action was denied on December 19, 1996. n3 Plaintiffs then filed the instant lawsuit on March 12, 1997.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 The consents to suit filed by Graham, LaBruna, and Uriano were dated on or before November 3, 1995 and filed with the court on April 4, 1996. Clark signed his consent to suit on November 14, 1996 and filed it on November 15, 1996; Therrien signed on April 20, 1996 and filed on June 17, 1996; Zurell signed on April 19, 1996 and signed on June 17, 1996. Frenette filed his consent to suit on April 4, 1996; there is, however, no signature date.

[*6]

n3 When class certification was denied, two suits in addition to the present lawsuit were filed: Daley et al. v. United Technologies, Pratt & Whitney Division, 3:97 CV 0439 (AVC) and Pace v. United Technologies, Pratt & Whitney Division, 3:97 CV 0481(AVC).

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

Plaintiffs move for summary judgment on the Third Count of their complaint, which alleges that the Release signed by each of them violates the OWBPA and therefore is void and unenforceable. They also move for summary judgment on defendant's counterclaim for breach of the Release agreement. Defendant also moves for summary judgment. It moves for summary judgment on each of plaintiff's three claims on the following grounds: that the complaint is barred by the applicable statute of limitations n4; that plaintiffs ratified the release and waiver of claims by retaining the received consideration; and that the Releases are valid agreements that bar pursuit of the instant claims. In addition, defendant seeks summary judgment on its counterclaim for breach of the Release agreement.

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n4 Defendant seeks summary judgment on statute of limitations grounds with respect to only Graham, LaBruna, and Uriano.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - -

[*7]

DISCUSSION

[HN1] Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). [HN2] In determining whether or not the record presents genuine issue for review, the court must resolve all factual disputes in favor of the non-moving party. See *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. 152 (1991). [HN3] The mere existence of some factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

I. Statute of Limitations

Defendant moves for summary judgment on plaintiffs Graham, LaBruna, and Uriano's ADEA claims on the grounds that such claims are time-barred by the statute of limitations. Defendant's primary argument is two-fold: (1) that plaintiffs Graham, LaBruna, and Uriano commenced their respective suits when they filed their written consent to suit with the district court; and (2) that the statute of limitations is not tolled by the filing of the complaint in the [*8]Elliot action. Plaintiffs, on the other hand, argue that their claims were timely filed because they were filed within 90 days of the Elliot court's decision to deny the motion for class certification. At this root of this controversy is the issue of whether ADEA opt-in class actions should be governed by the tolling principles of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 216(b), as modified by § 7 of the Portal to Portal Act, 29 U.S.C. §§ 251-262 or Title VII, 42 U.S.C. § 2000e et seq.

[HN4] Under the ADEA, an aggrieved employee must file a charge of unlawful discrimination with the EEOC within 300 days after the alleged unlawful practice occurred. 29 U.S.C. § 626(d). The individual then must wait sixty days after the filing the charge to file a civil action. Any civil action must be filed within 90 days of receiving notice of the right to sue from the EEOC. 29 U.S.C. § 626(e). n5 In addition, class actions are explicitly authorized by § 7(b) of the Act, 29 U.S.C. § 626(b), which explicitly adopts the opt-in class mechanism of the FLSA. Under this mechanism, a person may maintain an action on behalf of himself and other employees similarly situated. No person[*9] can become a party plaintiff to such a civil class action, however, unless that person affirmatively "opts into" the class by giving written filed consent. 29 U.S.C. § 216(b).

------------------Footnotes------------------

n5 Congress amended § 626(e) in 1991, thereby adopting the current 90 day statutory period. Prior to that time, the ADEA incorporated by reference the statute of limitations found in § 6 of the Portal-to-Portal Pay Act, 29 U.S.C. §§ 251-262. [HN5] That section states that civil actions must be filed within two years of the alleged unlawful practice for non-willful violations and three years for willful violations. Thus, prior to the 1991 amendment, the filing of civil actions was not tied to the administrative charge.

------------------End Footnotes------------------

[HN6] The filing of an administrative charge with the EEOC ordinarily is a jurisdictional prerequisite to filing a civil action in federal court. See 29 U.S.C. § 626(d). However, under limited circumstances, plaintiffs who have not done so are permitted to "piggyback" onto the suit of someone else who has filed an administrative[*10] charge alleging class-wide discrimination. See *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1057 (2d Cir. 1990), cert. denied, 499 U.S. 983, 113 L. Ed. 2d 736, 111 S. Ct. 1641 (1991). This concept, also known as the single-filing rule, allows other plaintiffs covered by that charge, who could have filed their own timely charge on that date, to rely on the EEOC charge of the single-filing plaintiff. *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189, 194 (6th Cir. 1995), cert. denied, 116 S. Ct. 378 (1995); *Anson v. University of Texas Health Science Ctr. at Houston*, 962 F.2d 539, 541 (5th Cir. 1992).

[HN7] To properly piggyback a claim, there must be an EEOC charge that provides notice of the class nature of the claim and the plaintiffs relying on the single-filing rule must have been able to file a timely charge on the date that the original individual did so. *Tolliver v. Xerox Corp.*, 918 F.2d at 1058. Here, Elliot's initial EEOC charge was filed on behalf of himself and all other similarly situated employees after the allegedly unlawful discharge of the plaintiffs. At the time that Elliot filed the charge, each plaintiff would have been able to file a timely charge of discrimination. [*11] After receiving notice from the EEOC regarding his charge, Elliot timely filed his civil action. The classes enumerated in both the

charge and the complaint encompass plaintiffs. Thus, the single-filing requirements are met.

Defendant argues, however, that despite meeting these requirements, plaintiffs Graham, LaBruna, and Uriano's claims are barred by the statute of limitations. It reasons that, because class actions under the ADEA are opt-in classes akin to those created under § 216(b) of the FLSA, Congress meant for these actions to be governed by the tolling principles of § 256 of the FLSA, under which the statute of limitations on an individual's action continues to run until that plaintiff opts into a class by filing his or her consent to suit. Since plaintiffs Graham, LaBruna, and Uriano did not file their consents to suit until April 4, 1996-- approximately 5 months after the latest date on which they had notice of the termination of the EEOC's proceedings in the Elliot matter-- defendant argues that their claims were untimely filed.

In contrast, plaintiffs claim that ADEA class actions are properly governed by the tolling principles of Fed. R. Civ. P. 23, under which the[*12] claims of all class members are protected by the filing of the original, timely complaint. See *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 551, 38 L. Ed. 2d 713, 94 S. Ct. 756 (1974). They reason that the commencement of the Elliot class action suspended the applicable statute of limitations as to their claims, at least until class certification was denied. Since the instant lawsuit was filed on March 12, 1997, within three months after the Elliot court denied the motion to certify the proposed class, they argue that their claims are timely.

[HN8] The ADEA adopts by reference certain enforcement provisions of the FLSA, but the remedial provisions of the two statutes are not identical. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 125, 83 L. Ed. 2d 523, 105 S. Ct. 613 (1985). As the Supreme Court has noted, [HN9] "in enacting the ADEA, Congress exhibited both a detailed knowledge of the FLSA provisions and their judicial interpretation and a willingness to depart from those provision regarded as undesirable or inappropriate for incorporation." *Lorillard v. Pons*, 434 U.S. 575, 581, 55 L. Ed. 2d 40, 98 S. Ct. 866 (1978). As defendant fully recognizes, § 256 of the[*13] FLSA is not incorporated into the ADEA. n6 The notable absence of this provision, and the lack of legislative history to the contrary, leads this Court to believe that Congress did not intend this provision of the FLSA to be incorporated by reference. *Levine v. Bryant*, 700 F. Supp. 949, 952 (N.D. Ill. 1988).

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n6 As explained by the district court in *Mooney v. Aramco Services Co.*, 764 F. Supp. 461 (S.D.Tex. 1991),

Congress's incorporation of the FLSA consent requirement of 29 U.S.C § 216(b) does not undermine the conclusion that Congress chose not to incorporate § 256. Sections 216 and 256 address different matters. Section 216 addresses the jurisdictional issue of who will be bound by the judgment, namely, those who opt in. Section 256 addresses the statute of limitations question. "Congress could logically and sensibly have chosen to incorporate § 216(b) and exclude § 256 from the ADEA as the unambiguous statutory language suggests Congress did." *Vivone v. Acme Markets*, 687 F. Supp. 168, 169 (E.D.Pa. 1988).

764 F. Supp. 461 at 463.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*14]

This finding is consistent with the observation that, while the ADEA and FLSA share procedural similarities, the relationship between Title VII -- which is governed by Rule 23-- and the ADEA is much closer. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. at 121 n.16. As stated earlier, the statute of limitations in a Rule 23 action is tolled by the initiation of the suit by the named plaintiff. *American Pipe & Construction Co. v. Utah*, 414 U.S. at 551. In the absence of a Congressional statement to the contrary, we believe this general rule should also apply to class actions brought pursuant to the ADEA. Thus, we find that [HN10] the commencement of an ADEA class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

In so holding, we join the majority of courts that have considered this issue and determined that the more restrictive rule for tolling under the FLSA does not apply to suits brought pursuant to the ADEA. See *Armstrong v. Martin Marietta Corp.*, 93 F.3d 1505, 1508 (11th Cir. 1996)("Membership in a pending class action . . . tolls the ninety-day[*15] period for filing an individual lawsuit."); *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 471 (3d Cir. 1994); *In re Western District Xerox Litigation*, 850 F. Supp. 1079, 1093 (W.D.N.Y. 1994)("Tolling commences for statute of limitations

purposes for subsequently filed complaints, when the initial class action complaint was filed and not when class members opted into the certified class."); *Mooney v. Aramco Services Co.*, 764 F. Supp. 461, 463 (S.D.Tex. 1991)("In class actions under the ADEA, the statute of limitations is tolled when the claims and potential class plaintiffs are described with sufficient particularity to put the defendant on notice about those claims and the potential class size."); *Levine v. Bryant*, 700 F. Supp. 949, 953 (N.D.Ill. 1988)("in light of Congress' silence, it is appropriate to apply the American Pipe rule, since this rule would apply to all other class actions in the absence of statutory provisions to the contrary."). But c.f. *O'Connell v. Champion International Corp.*, 812 F.2d 393, 394 (8th Cir. 1987); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1105 (11th Cir.), cert. denied, 117 S. Ct. 435 (1996).

Accordingly, we deny defendant's[*16] motion for summary judgment, on statute of limitations grounds, as to the claims of plaintiffs Graham, LaBruno, and Uriano.

II. Validity of the Release and Waiver of Claims

Defendant also moves for summary judgment on plaintiffs' claims on the grounds that the Releases signed by plaintiffs in exchange for enhanced severance packages are enforceable and preclude any age discrimination claims that plaintiffs may have against it. In addition, defendant moves for summary judgment on its counterclaim, which alleges that plaintiffs breached these Release agreements by initiating the present lawsuit. Plaintiffs oppose defendant's motion, arguing that the Releases are unenforceable because they do not meet the requirements of the OWBPA.

In 1991, Congress amended the ADEA through the enactment of the OWBPA, codified in § 626 of the Act. [HN11] This section, entitled "Waiver of Rights and Claims", specifically limits the manner in which an employee may waive the protections afforded to him or her under federal law. Under the OWBPA, "an individual may not waive any right or claim . . . unless the waiver is knowing and voluntary." *29 U.S.C. § 626(f)(1)*. "Knowing and voluntary" is defined such [*17]that "a waiver may not be considered knowing and voluntary unless at a minimum . . ." certain statutory factors are either satisfied or inapplicable. *29 U.S.C. § 626(f)(1)*. The two factors at issue here are the requirements set forth in § 626(f)(1)(F)(ii) and (H). n7

------------------Footnotes------------------

n7 [HN12] Section 626(f)(1)(F)(ii) requires that

if a waiver is requested in connection with an exit incentive or other employment termination program offered to a group or class of employees, the individual is given a period of a least 45 days in which to consider the agreement.
[HN13]
Section 626(f)(1)(H) requires that

if a waiver is requested in connection with an exit incentive program or other employment termination program offered to a group or class of employees, the employer (at the commencement of the period specified in subparagraph (F)) informs the individual in writing in a manner calculated to be understood by the average individual eligible to participate, as to-

(i) any class, unit, or group of individuals covered by such program, any eligibility factors for such program, and any time limits applicable to such program; and,

(ii) the job titles and ages of all individuals eligible or selected for the program, and the ages of all individuals in the same job classification or organizational unit who are not eligible or selected for the program.

------------------End Footnotes------------------

[*18] [HN14]

The requirements of both sections (F)(ii) and (H) are triggered where a waiver of an employee's rights and claims is "requested in connection with an exit incentive program or other employment termination program offered to a groups or class of employees." Despite defendant's protestations that "exit incentive program or other employment termination program" does not encompass involuntary termination programs, such as the one at issue here, we believe that [HN15] it is clear from the legislative history that Congress intended these requirements to apply to both voluntary and involuntary termination programs. n8 See also *Raczak v. Ameritech Corp.*, 103 F.3d 1257, 1259 (6th Cir. 1997)(applying requirements of § 626(f)(1)(H)(ii) to involuntary termination program); *Oberg v. Allied Van Lines, Inc.*, 11 F.3d 679, 682 (7th Cir. 1993), cert. denied, 511 U.S. 1108, 128 L. Ed. 2d 665, 114 S. Ct. 2104 (1994); *Elliot v. United Technologies Corp., Pratt & Whitney Division*, No. 3:94 CV 1577(AVC), slip op. at 6-7 (D. Conn. May 19, 1995)( The "legislative history . . . demonstrates that

Case 3:02-cv-01370-AHN  Document 104  Filed 11/17/2003  Page 18 of 18

1997 U.S. Dist. LEXIS 14148, *                                    Page 11

Van Lines, Inc., 11 F.3d at 683. See also Long v. Sears, Roebuck & Co., 105 F.3d at 1539 ("We are convinced that in enacting the OWBPA, Congress intended to occupy the area of ADEA releases and, in doing so, to supplant the common law; the OWBPA was enacted to establish a floor, not a ceiling.")(internal quotation marks omitted); Elliot v. United Technologies Corp., No. 3:94 CV 1577(AVC), slip op. at 15-16 (D. Conn. May 19, 1995).

As stated earlier, the Release agreements signed by plaintiffs were not valid when executed. Such invalid ADEA releases cannot become subsequently ratified by plaintiffs' retention of the severance benefits. "No matter how many times parties may try to ratify such a contract, [*22] the language of the OWBPA . . . forbids any waiver." Oberg v. Allied Van Lines, Inc., 11 F.3d at 683. But c.f. Wamsley v. Champlin Refining and Chemicals, 11 F.3d 534, 539-40 (5th Cir. 1993); Blistein v. St. John's College, 74 F.3d 1459, 1466 (4th Cir. 1996). Thus, as a matter of law, plaintiffs did not ratify their Release agreements when they retained the consideration received from Pratt & Whitney.

With respect to defendant's claim that plaintiffs must tender back these benefits as a precondition to pursuing their ADEA claims, we are persuaded by the district court's reasoning in Elliot v. United Technologies Corp., No. 3:94 CV 1577(AVC), slip op. at 18-21 (D. Conn. May 19, 1995), that this equitable principle has no application to the present case. As Judge Covello stated in Elliot,

the plaintiff has relinquished numerous rights in return for the severance package he received . . . including those which he would otherwise have under Title VII, the Rehabilitation Act, the ADA, as well as any claims for wrongful discharge. It would run counter both to notions of fairness and to the literal terms of the severance agreement itself to require the plaintiff[*23] to tender back the benefits he received when the defendant is still entitled to enforce the plaintiff's waiver of all other rights and claims.

Elliot v. United Technologies Corp., No. 3:94 CV 1577(AVC), slip op. at 21 (D. Conn. May 19, 1995). Since the Release signed by plaintiffs in the instant case is the same as that signed by Elliot, we find that plaintiffs need not tender back the consideration received in exchange for signing the Releases in order to pursue their claims. As a matter of equity, however, the severance benefits that the defendant paid to the plaintiffs may be deducted from any award determined to be due to plaintiffs as a result of the ADEA suit. Elliot v. United Technologies Corp., No. 3:94 CV 1577(AVC), slip op. at 21 (D. Conn. May 19, 1995), citing, Oberg v. Allied Van Lines, Inc., 11 F.3d at 685; Hogue v. Southern R. Co., 390 U.S. 516, 518, 20 L. Ed. 2d 73, 88 S. Ct. 1150 (1968).

Accordingly, the Releases signed by plaintiffs in exchange for the enhanced severance package violated the OWBPA. Further, these Releases were not, as a matter of law, ratified by plaintiffs' continued receipt and retention of the severance benefits. Finally, [*24] plaintiff's need not tender back the benefits to proceed with their ADEA claims.

CONCLUSION

For the above-stated reasons, we GRANT plaintiffs' motion for summary judgment (Document # 13) on Count Three of their complaint and on defendant's counterclaim for breach of the Release agreements. Consequently, we DENY defendant's motion for summary judgment (Document # 8).

So Ordered.

Dated: September 3, 1997

Waterbury, Connecticut

Gerard L. Goettel

U.S.D.J.