FILED

2003 DEC 22  P 12: 42

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MAUREEN ALLEN, ET AL, | : | CIVIL ACTION NO. 3:02CV1370(AHN) |
|    *Plaintiffs* | : | |
| | | |
| v. | : | |
| | | |
| JOHN J. ARMSTRONG, ETAL, | : | |
|    *Defendants* | : | DECEMBER 18, 2003 |

## MEMORANDUM IN SUPPORT OF DEFENDANT ARPIN'S MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the defendant, Vicki Arpin, hereby moves this court to dismiss all counts of the plaintiffs' complaint against her in her individual capacity for failure to state a claim for which relief can be granted, lack of jurisdiction over the subject matter and because the claims are barred by qualified and sovereign immunity.

## FACTUAL BACKGROUND

The plaintiffs, fourteen employees of the Connecticut Department of Correction [hereinafter, "DOC"], brought a ten-count complaint against the State of Connecticut and fifty-six individually named defendants, including Vicki Arpin, alleging sexual harassment, discrimination, retaliation, equal protection violations, and intentional and negligent infliction of emotional distress during their employment at DOC. The plaintiffs brought said counts pursuant to 42 U.S.C. §§1983 (violations of equal protection), 1985 (conspiracy) and 1986 (neglect to prevent wrongs); 28 U.S.C. §2201 (declaratory judgment); 42 U.S.C. §2000e (Title VII), et seq; and state common law, and include claims against Arpin in her individual and official capacities.

A motion to dismiss the claims against Ms. Arpin in her official capacity was filed by Assistant

Attorneys General Jane B. Emmons and Terrance M. O'Neil, and is pending before the Court.

At the time relevant to the complaint (but no longer), Ms. Arpin was the Director of the

Human Resources Unit at DOC (Third Amended Complaint [hereinafter, "Complaint"], para.

10).  The plaintiffs allege, despite statutory and regulatory authority to the contrary,[1] that merely

---

[1]Conn. Gen. Stat. § 18-81, entitled "Duties of commissioner," clothes only the DOC
Commissioner with the authority to establish policies and procedures and charges him or her
only with the duty to administer said policies and procedures:

> The Commissioner of Correction shall administer, coordinate and control the
> operations of the department and shall be responsible for the overall supervision
> and direction of all institutions, facilities and activities of the department.  He
> shall establish rules for the administrative practices and custodial and
> rehabilitative methods of said institutions and facilities in accordance with
> recognized correctional standards.  He shall establish, develop and maintain
> noninstitutional, community-based service programs.  He shall be responsible for
> establishing disciplinary, diagnostic, classification, treatment, vocational and
> academic education, research and statistics, training and development services
> and programs throughout the department.  Subject to the provisions of chapter 67,
> [FN1] the commissioner shall appoint such professional, technical and other
> personnel as may be necessary for the efficient operation of the department.  The
> commissioner shall organize and operate interinstitutional programs for the
> development and training of institution and facility staffs.  He shall provide for
> the services of such chaplains as are necessary to minister to the needs of the
> inmates of department institutions and facilities.  He shall, within available
> appropriations for such purpose, arrange for provision of legal assistance of a civil
> nature to indigent inmates of department institutions and facilities and legal
> representation for such inmates before administrative boards where permitted or
> constitutionally required.

Similarly, Conn. Agency Reg. Sec. 18-81-1, specifies that the Commissioner is charged with the
administration of DOC's operations with the assistance of two deputies and a director of
security:

by virtue of her position, Ms. Arpin was responsible for "the establishment and enforcement of

policies and procedures concerning  the fair and equal treatment of Department employees"

(Complaint, para. 10); "the assignment, retention, promotion, transfer and discipline of

Department employees . . ." (Complaint, para. 10); the responsibility [together with "an

Affirmative Action representative"] for investigating and preventing sexual harassment at the

Department;" (Complaint, para. 410) and, together with the Commissioner and Deputy

Commissioners "to stop [  ] transfers and to order meaningful discipline of sexual harassers . . ."

(Complaint, para. 461).

---

(a) The Department of Correction operates under the direction of the Commissioner of Correction who is appointed by the Governor.  The Commissioner is responsible for the administration, coordination and control of the operations of the Department of Correction and for the overall supervision and direction of all institutions, facilities and activities of the Department and pre-sentenced and sentenced inmates.  The Commissioner is assisted in the discharge of his statutory duties by two deputy commissioners and a director:  the Deputy Commissioner of Operations;  Deputy Commissioner of Programs;  and the Director of Security.

(b) The Deputy Commissioner of Operations supervises the overall operation of the Department's correctional facilities, community directed programs, engineering services and fiscal operations.

(c) The Deputy Commissioner for Programs supervises the Department's health services, human resources, offender classification, educational services, training and staff development, research and management information systems, and offender programs.

(d) The Director of Security supervises tactical operations, investigation and intelligence functions, correctional emergency response teams, standards, policy and audit functions, public information and external liaison, and field operations including canine and remand functions.

The plaintiffs do not allege that at time alleged Ms. Arpin was the commissioner, a deputy commissioner or the director of security.

Besides these unsupported allegations of Ms. Arpin's wholesale responsibility for the DOC and its employees, the plaintiffs' only factual allegations specifically mentioning her are (1) that an incident report involving the complaint of plaintiff Paulette Williams about an Officer Dockery "was forwarded" to Ms. Arpin, as well as three other defendants (Complaint, para. 90); and (2) that Ms. Arpin "failed and refused to meaningfully respond" to a letter from defendant Warden Mark W. Strange, purportedly making a recommendation that Officer Dockery "be administratively transferred until this matter is concluded." (Complaint, para. 93). Both of these alleged "acts," being named as a recipient of the incident report and failing to respond "meaningfully" to the letter, are acts or omissions allegedly made by Ms. Arpin in her official capacity. (See Complaint, paras. 90 & 93). Notably absent from the complaint are any allegations of acts by Ms. Arpin in her individual capacity, any unconstitutional acts by Ms. Arpin or any facts linking her to any plaintiffs, other than Williams. (See Complaint, generally.) Moreover, the plaintiffs do not allege that Ms. Arpin was the supervisor of any of the purported harassers.

## STANDARD OF REVIEW

A defendant may assert on a motion to dismiss defenses to a claim for relief in any pleading, including lack of jurisdiction over the subject matter, lack of jurisdiction over the person, and failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 6. In ruling on a 12(b)(6) motion, the Court is required to accept the material facts alleged in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff. Courtenay Communs. Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003). A plaintiff's claims can

4

be dismissed for failure to state a claim only if the Court finds that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957); Courtenay, 334 F.3d at 213; see also Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002).

Nonetheless, the Court is not precluded from granting of 12(b)(6) motions. See, e.g., O'Neal v. State University of New York, Health Science Center Brooklyn, 2003 U.S. Dist. LEXIS 4404 (E.D. N.Y. 2003). "The complaint still must 'state claims upon which relief can be granted.'" Id. (quoting Swierkiewicz, 534 U.S. at 514.) Despite the liberal pleading standard, "bald assertions and conclusions of law will not suffice to state a claim." DeRay v. Larson, 2003 U.S. Dist. LEXIS 16684 (D. Conn. 2003) (citing Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000), abrogated on other grounds, Swierkiewicz, 534 U.S. 506). A complaint must give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests. Syken v. N.Y. Exec. Dep't, Div. of Hous. & Cmty. Renewal, 2003 U.S. Dist. LEXIS 5358 (S.D. N.Y. 2003). Bald assertions and conclusions of law will not suffice to state a claim. Tarshis, 211 F.3d at 35. Thus, a complaint like this one, which simply does not state the factual grounds upon which such discrimination claims could be based, even construing the allegations of the complaint liberally, must be dismissed. See Aiken v. Nixon, 236 F. Supp. 2d 211, 225-26 (N.D. N.Y. 2002) (citing Swierkiewicz, 122 S. Ct. at 998).

**LAW AND ARGUMENT**

**I. SECTION 1983 CLAIMS**

In the Second and Fourth Counts the plaintiffs assert Section 1983 claims against the

defendants, including Ms. Arpin, for violations of their right to equal protection and for the

defendants' failure to protect them from said violations. (Complaint, pp. 151 & 153-54).

Nonetheless, they allege no personal involvement by Ms. Arpin in causing or subjecting the

plaintiffs to the alleged constitutional violations. (See generally Complaint).

**A. The Plaintiffs Have Failed To Allege Sufficient Personal Involvement On Arpin's Part And Thus Fails To State A Claim Upon Which Relief Can Be Granted**

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected,'

the complainant to a deprivation of rights secured by the Constitution and laws." Rizzo v.

Goode, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. §1983). Where damages are sought in a

Section 1983 action, the individual defendant must be responsible for the alleged constitutional

deprivation. Id. at 376-378; Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986); Ellis v. Blum,

643 F.2d 68, 85 (2d Cir. 1981).

A plaintiff must allege that the defendant's direct or personal involvement in the actions

caused the constitutional deprivation for a valid cause of action under Section 1983. Rizzo, 423

U.S. at 376-378;  see also Richardson v. Goord, 347 F.3d 431, 432 (2nd Cir. 2003); Leonard v.

Poe, 282 F.3d 123, 140 (2d Cir. 2002); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995);

Williams, 781 F.2d at 323; Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987).  Thus, the

plaintiffs have no cause of action under Section 1983 against Ms. Arpin unless they can

demonstrate that she was personally involved in the alleged wrongdoing or contributed in some way to causing the plaintiff's alleged injuries. Bob v. Armstrong, 2003 U.S. Dist. LEXIS 20318 (D. Conn. 2003) (citing Leonard, 282 F.3d at 140).

Consistent with the requirement that personal involvement is required for a claim under Section 1983, the Supreme Court has ruled that the general doctrine of *respondeat superior* does not suffice to state a claim under Section 1983. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 692-95(1978); Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). Individual defendants are not liable simply by virtue of their position in the organizational chain of command because a subordinate committed a constitutional violation. Blyden, 186 F.3d at 264. In order to state a cognizable claim, even against a manager, the plaintiff must allege, and ultimately prove, "personal involvement of [the defendants] sufficient to support their liability for wrongful acts," not merely their "linkage in the . . . chain of command." Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985).

Even a claim of supervisory liability under Section 1983 requires an allegation of personal involvement by the defendant-supervisor.[2] Blyden, 186 F.3d at 264. Supervisory responsibility alone is not enough to confer exposure to liability. Blyden, 186 F.3d at 264; Williams, 781 F.2d at 323. A supervisory official may only be liable if he learned of the violation and failed to remedy the wrong, if he created or permitted the policy or wisdom under which the unconstitutional practices occurred, or if he was grossly negligent in managing

---

[2] As already noted, the plaintiffs make no allegation that Ms. Arpin supervised any of the named harassers. (See Complaint.)

subordinates who caused the violation. Meriwether v. Coughlin, 879 F.2d 1037, 1047-48 (2d Cir. 1989); Williams, 781 F.2d at 323-24.

"A plaintiff must thus allege a tangible connection between the acts of the defendants and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). A supervisor may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for *his gross negligence* in failing to supervise his subordinates who commit such wrongful acts, only if the plaintiff can show an affirmative casual link between the supervisor's inaction and her injury. Poe v. Leonard, 282 F.3d 123, 141-42 (2d Cir. 2002). Moreover, the supervisor must be on notice that there was a high risk that his subordinate would violate another's constitutional right. Id. at 140-146. Accordingly, a plaintiff must allege and prove that the individual defendant had specific knowledge of facts giving rise to a constitutional violation. Id.

Similarly, an official cannot be held liable merely because he or she occupies a high position in the government agency hierarchy. Colon, 58 F.3d at 874; Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989); Meriwether, 879 F.2d at 1046. A public official can only be liable if the official causes the harm. Baker v. McCollan, 443 U.S. 137, 142, 99 S. Ct. 2689, 2693 (1979); Blyden, 186 F.3d at 264. There must be some showing of personal responsibility to support an individual capacity damages claim. Gill, 824 F.2d at 196; Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987); Ayers, 780 F.2d at 210;

A complaint which fails to allege that a defendant was directly and personally responsible for the purported conduct is fatally defective. Alfaro Motors, 814 F.2d at 886. The courts have

consistently held that, where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted. <u>Messina v. Mazzeo</u>, 854 F. Supp. 116, 126 (E.D.N.Y. 1994) <u>see also</u> <u>Gill</u>, 824 F.2d 192 and <u>Ayers</u>, 780 F.2d 205 (dismissal appropriate where plaintiff did no more than allege the defendant was in charge of a prison).

In this case, the plaintiffs have failed to allege any personal involvement by Ms. Arpin other than to allege that she held the position of Director of Personnel and that she was copied on one letter relating to one of the alleged offenders. The plaintiffs allege nowhere that Ms. Arpin deprived any of the plaintiffs of their constitutional rights; that she supervised the purported harassers; or that she was personally responsible for the alleged conduct. Indeed, the plaintiffs allege no causal connection whatsoever between Ms. Arpin and the plaintiffs' constitutional deprivations. As a matter of law, the allegations concerning Ms. Arpin are insufficient to maintain a Section 1983 cause of action against her and all such claims against her, including those set forth in the Second and Fourth Counts should be dismissed.

## B. The Plaintiffs Have Failed To State A Equal Protection Claim Against Ms. Arpin For Which Relief Can Be Granted

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." <u>Albright v. Oliver</u>, 510 U.S. 266, 271, 114 S. Ct. 807, 811 (1994) (internal citations omitted). Thus, to succeed on their Section 1983 claiming violation of the Equal Protection Clause, the plaintiffs must also plead and prove that Ms. Arpin violated the plaintiffs' right to equal protection and did so with deliberate indifference to the law.

Gant v. Wallingford Board of Education, 195 F.3d 134, 139-40 (2d Cir. 1999). Section 1983 liability cannot be based on mere negligence. Wise v. New York City Police Dept., 928 F. Supp. 355, 368 (S.D.N.Y. 1996). "Deliberate indifference to discrimination can be shown from a defendant's action or inaction in light of known circumstances." Id. "The ultimate inquiry, of course, is one of discriminatory purpose on the part of the defendant himself." Id. Therefore, to establish a Section 1983 violation of the Equal Protection Clause, the plaintiff must show that the defendant's indifference was such that the defendant intended the discrimination to occur. Id.

The Fourteenth Amendment to the United States Constitution declares that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Brown v. City of Oneonta, 221 F.3d 329, 336-37 (2d Cir. 1999) (quoting U.S. Const. amend. XIV, §1). "The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" Id. at 337 (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). The clause does not create a substantive right, but directs states to treat like cases alike. Vacco v. Quill, 521 U.S. 793, 117 S. Ct. 2293, 2297 (1997). An Equal Protection claim can only exist if a state engages in some type of impermissible "classification" of an individual. Vacco, 117 S. Ct. at 2297.

It is well established that "[t]o state a valid cause of action under the Equal Protection Clause of the Fourteenth Amendment, plaintiffs must allege that: (i) compared with others similarly situated, the plaintiffs were selectively treated; and (ii) such selective treatment was based on impermissible considerations, such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Penlyn

Development Corp. v. Incorporated Village of Lloyd, 51 F. Supp. 2d 255, 264 (E.D.N.Y. 1999).

Moreover, to state a claim under the Equal Protection Clause, the plaintiffs must allege that a

government actor *intentionally* discriminated against them. See id. (citing Hayden v. County of

Nassau, 180 F.3d 42, 48 (2d Cir. 1999)); see also Gant, 195 F.3d at 139-40; U.S. v. City of

Yonkers, 96 F.3d 600, 611 (2d Cir. 1996) (citing Village of Arlington Heights v. Metropolitan

Housing Development Corp., 429 U.S. 252, 265 (1977)).

It is not enough to show that the state action complained of had a disproportionate or

discriminatory impact:  plaintiffs must show that the action was taken with intent to discriminate.

City of Yonkers, 96 F.3d 600 at 611 (citing Village of Arlington Heights, 429 U.S. at 265).

Discriminatory intent implies that the decision maker selected or reaffirmed a particular course

of action "because of," not merely "in spite of," its adverse effects upon an identifiable group.

Hayden, 180 F.3d at 48 (citing Personnel Administrator v. Feeney, 442 U.S. 256, 279 (1979)).

Discriminatory intent or purpose typically refers to those instances when a government actor

*seek*s to disadvantage or negatively impact a group of persons.  Id. (citing Washington v. Davis,

426 U.S. 229, 245-46 (1976)).

The plaintiffs must show first that the defendant was a decision maker and then that the

decision maker acted with discriminatory purpose. McClesky v. Kemp, 481 U.S. 279, 292

(1987).  A plaintiff can plead such intentional discrimination by (1) pointing to a law or policy

that "*expressly* classifies persons: impermissibly; Brown, 221 F.3d at 337 (citing Adarand

Constructors, Inc. v. Pena, 515 U.S. 200, 213, 227-29 (1995)); (2) identifying a facially neutral

law or policy that has been applied in an *intentionally* discriminatory manner;" Id. (citing Yick

Wo v. Hopkins, 118 U.S. 356, 373-74 (1886)); see also Hayden, 180 F.3d at 48; or (3) alleging that a facially neutral statute or policy has an adverse effect and that it was *motivated by discriminatory animus"* (emphasis added). Brown, 221 F.3d at 336-37 (citing Village of Arlington Heights, 429 U.S. at 264-65); see also Hayden, 180 F.3d at 48; Johnson v. Wing, 178 F.3d 611, 615 (2d Cir. 1999);.

State law determines whether a particular official has final policy-making authority. City of St. Louis v. Proprotnik, 485 U.S. 112, 124, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); see also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737, 105 L. Ed. 2d 598, 109 S. Ct. 2702 (1989). A party who has authority to recommend and whose recommendation can only be implemented upon subsequent approval by a superior or governing body is not a final policy maker. See Hill v. New York City Board of Education, 808 F. Supp. 141, 151 (E.D.N.Y. 1992) (citing Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986)); see also Anthony v. City of New York, 3339 F.3d 129, 139 (2003). In this case, both Connecticut statutes and regulations specify that only the DOC Commissioner, not Ms. Arpin, had the authority to make policy or to take action to prevent the conduct alleged by the plaintiffs. See Conn. Gen. Stat. §18-81; Conn. Agency Reg. Sec. 18-81-1; and *infra*, note 1. Thus, she was not a decision maker with final policy-making authority and cannot be liable for the alleged discriminatory acts.

Indeed, the plaintiffs here have made none of the allegations necessary for a viable equal protection claim against Ms. Arpin. (See Complaint generally.) The only allegations made about her – that someone forwarded to her and three other defendants a report of an incident involving plaintiff Paulette Williams and an Officer Dockery and that Ms. Arpin "failed and

refused to meaningfully respond" to a subsequent letter from defendant Warden Mark W.

Strange, purportedly making a recommendation that Officer Dockery be administratively

transferred -- suggest, at worst, a negligent failure to act. The plaintiffs have failed to allege, and

could not do so in good faith, that Ms. Arpin, herself, acted to discriminate against the plaintiffs,

that she did so with intent to discriminate or that she took any action with discriminatory

purpose. For this additional reason, the plaintiffs cannot prevail in their equal protection claim

against Ms. Arpin and the Court must dismiss it.

### C. Ms. Arpin Is Entitled To Qualified Immunity From The Plaintiffs' Section 1983 Claims

In order to prevail on an action for damages under Section 1983 against a government

official, a plaintiff must demonstrate that the official violated "clearly established statutory or

constitutional rights of which a reasonable person would have known." Conn v. Gabbert, 526

U.S. 286, 290 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S.

Ct. 2727 (1982)). Therefore, in order for an official to be held personally liable, "the contours of

the right must be sufficiently clear that a reasonable official would understand that what he is

doing violates that right." Green v. Bauvi, 46 F.3d 189, 195 (2nd Cir. 1995) (quoting Anderson v.

Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed 523 (1987)).

The qualified immunity doctrine shields governmental officials performing discretionary

functions from liability for civil damages insofar as their conduct does not violate clearly such

rights. Poe, 282 F.3d at (2nd Cir. 2002). This doctrine "strikes a balance between the need, on

one hand, to hold responsible public officials exercising their power in a wholly unjustified

manner and, on the other hand, to shield officials responsibly attempting to perform their public

duties in good faith from having to explain their actions to the satisfaction of a jury." Id. (quoting Locurto v. Safir, 264 F.3d 154, 162-63 (2d Cir. 2001)). "As the Supreme Court has explained, the 'concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [] conduct. . . . If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to' immunity." Id. at 133 (quoting Saucier v. Katz, 150 L. Ed. 2d 272, 533 U.S. 194, 205, 121 S. Ct. 2151, 2158 (2001)). "'Thus, if the court determines that the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendant's conduct under the circumstances,' qualified immunity applies." Id. (quoting Lennon v. Miller, 66 F.3d 416, 421 (2d Cir. 1995)).

Qualified immunity is an appropriate inquiry for a motion to dismiss, as it provides government officials the right to not only avoid trial, but to also avoid the burdens of "such pretrial matters as discovery . . ., as inquiries of this kind can be peculiarly disruptive of effective government." Behrnes v. Pelletier, 516 U.S. 299, 308 (1996) (internal citations omitted). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. Accordingly, the Supreme Court has "repeatedly [] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam).

The qualified immunity analysis depends upon an individualized determination of the misconduct alleged. Poe, 282 F.3d at 134. Because the establishment of both the violation and

14

the defense depend upon evaluating the harm inflicted and the individual responsibility of the accused public official, both the subordinate's and the supervisor's actions (or lack thereof) are relevant. Id. For example, to establish liability, the plaintiffs must prove proximate causation. Id. (citing Blyden, 186 F.3d at 264). They "must affirmatively connect the supervisor's conduct to the subordinate's violative act or omission." Id. (quoting Camilo-Robles, 151 F.3d 1, 7 (1st Cir. 1998), cert. denied, 525 U.S. 1105, 142 L. Ed. 2d 773, 119 S. Ct. 872 (1999)).

Although the plaintiffs here have asserted that they were injured as a result of the alleged acts of sexual harassment, they have not alleged that this harm resulted from Ms. Arpin's conduct. (See Complaint.) To find her ineligible for immunity solely because other DOC employees, not even supervised by Ms. Arpin, acted unlawfully would be patently unfair as well as illogical. See id. (citing Blyden, 186 F.3d at 264)). Even more unjust and unreasonable would be denying Ms. Arpin immunity under these circumstances where she had no authority in her individual or official capacity to take any action to discipline the purported offenders. (See infra, note 1).

"Qualified immunity exists in part to protect society from the 'substantial social cost[]' that governmental officials, fearing 'personal monetary liability and harassing litigation[,] will unduly [be inhibited] in the discharge of their duties.'" Poe, 282 F.3d at 135 (citing Anderson, 483 U.S. at 638). Plaintiffs must define the right allegedly violated clearly enough that a reasonable official would understand that his actions violated that right. Otherwise, "plaintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified

liability simply by alleging violation of extremely abstract rights." Id. (citing Anderson, 483 U.S. at 639).

The plaintiffs fail to allege any action on the part of Ms. Arpin that would breach clearly established constitutional rights and fail to allege any action where Ms. Arpin, or any other objectively reasonable government official, would be on notice that she was violating any clearly established constitutional rights. (See generally Complaint). The plaintiffs merely allege that someone forwarded to Ms. Arpin and three other defendants an incident report involving the complaint of *one* of the plaintiffs (Complaint, para. 90); and that Ms. Arpin "failed and refused to meaningfully respond" to a letter from another defendant purportedly making a recommendation that the alleged harasser of the same one plaintiff be administratively transferred. (Complaint, para. 93). No reasonable person, including Ms. Arpin, could have known that receiving an incident report and failing to respond "meaningfully" to a letter would be construed as conduct violative of clearly established statutory or constitutional rights. Neither receiving an incident report or failing to respond "meaningfully" to a letter of recommended administrative action, absent more, are acts or omissions rising to a constitutional violation. Indeed, even if these acts did give rise to an equal protection claim, only the rights of the one plaintiff who was the subject of the complaint. The plaintiffs fail to allege intentional discrimination or malice on the part of Ms. Arpin, and even fails to allege that she had the authority to act in a manner "meaningful" to the plaintiffs.

Accordingly, as a matter of law, plaintiffs' scant allegations against Ms. Arpin are insufficient to overcome Ms. Arpin's qualified immunity protection and the Section 1983 claims against Ms. Arpin should be dismissed.

## II. SECTION 1985 CLAIM

**The Plaintiffs Have Failed To State a Violation Of Section 1985 Against Ms. Arpin For Which Relief Can Be Granted**

In the Third and Fifth Counts, the plaintiffs allege, pursuant to 42 U.S.C. §1985, that the defendants conspired to commit the purported equal protection violations. Again, they fail to allege any facts to support such a claim against Ms. Arpin.

Section 1985 prohibits conspiracy to interfere with civil rights and provides parties injured by such conspiracies with a right of action for damages against one or more of the conspirators. 42 U.S.C. §1985. The statute creates no substantive rights, but prohibits conspiracies to deprive person of rights created elsewhere. Spencer v. Casavilla, 903 F.2d 171, 174 (2nd Cir. 1990).

In order to state a violation of Section 1985 the plaintiffs must allege that: (1) the defendant was part of a conspiracy; (2) the conspiracy was for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities of the laws; (3) the defendant participated in an overt act in furtherance of the conspiracy; and (4) said act caused a person to be injured either injured in his person or property or deprived of any right or privilege of a citizen of the United States. Thomas v. Roach, 165 F.3d 137, 147 (2nd Cir. 1999) (citing Traggis v. St. Barbara's Greek Orthodox

Church, 851 F.2d 584, 586-87 (2d Cir. 1988), citing Griffin v. Breckenridge, 403 U.S. 88, 102-03, 29 L. Ed. 2d 338, 91 S. Ct. 1790 (1970)).

In order to maintain an action under Section 1985, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 111 (2nd Cir. 2003). Furthermore, the plaintiffs must allege that the conspirator was motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus." Thomas, 165 F.3d at 147 (citing Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993), quoting United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829, 77 L. Ed. 2d 1049, 103 S. Ct. 3352 (1983)).

As already articulated in this memorandum, the plaintiffs have failed to allege that Ms. Arpin, herself, took any underlying action to deprive them of their equal protection rights or cause them injury. Moreover, the plaintiffs have not alleged, except in the most conclusory fashion, that any meeting of the minds occurred among any or all of the defendants, particularly Ms. Arpin. For these reasons the conspiracy claims made in Counts Three and Five must be dismissed as against Ms. Arpin. See Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (dismissal of "conclusory, vague or general allegations of conspiracy to deprive a person of constitutional rights" is proper).

## III.  SECTION 1986 CLAIM

**The Plaintiffs Have Failed To State a Violation Of Section 1986 Against Ms. Arpin For Which Relief Can Be Granted.**

Section 1986, entitled "Action for neglect to prevent conspiracy," provides:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in [42 USCS §1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action . . .

42 U.S.C. 1986.  The plaintiffs' Section 1986 claim, alleged in the Sixth Count, like their Section 1985 count, fails to state a valid claim against Ms. Arpin.

Liability under Section 1986 is derivative of Section 1985 liability:  there can be no violation of Section 1986 without a violation of Section 1985.  Jews for Jesus v.  Jewish Community Relations Council of New York, Inc., 968 F.2d 286 (2d Cir 1992).  Since the plaintiffs must have an actionable conspiracy under Section 1985 before they can bring a claim under Section 1986, and they have not alleged a Section 1985 claim against Ms. Arpin for which relief can be granted, the Section 1986 claim made against her in Count Six must also be dismissed.

Moreover, Section 1986 expressly provides that "no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued." 42 U.S.C. §1986.  As most of the constitutional violations alleged by the plaintiffs

occurred more than one year before their complaint was filed on July 3, 2003,[3] the Section 1986

claim should be dismissed on this additional ground.

## IV. THE STATE COMMON LAW TORT CLAIMS

### A. The Plaintiffs' Claim for Negligent Infliction for Emotional Distress is Barred by Statutory and Sovereign Immunity.

As a former DOC employee, Ms. Arpin is immune from liability in her individual

capacity for the claim of negligent infliction of emotional distress pursuant to Conn. Gen. Stat.

§4-165 and the doctrine of sovereign immunity. Section 4-165, entitled "Immunity of state

officers and employees from personal liability," expressly provides that *"[n]o state* officer or

*employee shall be personally liable for damage or injury*, not wanton, reckless or malicious,

*caused in the discharge of his duties or within the scope of his employment"* (emphasis added).

Conn. Gen. Stat. § 4-165; see, e.g., Miller v. Egan, 265 Conn. 301, 318-319; Anderson, 2000 WL

327597. The statute provides the state employees with a statutory immunity distinct from the

state's common-law sovereign immunity. Hanna v. Capitol Region Mental Health Center, 74

Conn. App. 264, 268 (2002); see also Martin v. Brady, 261 Conn. 372 (2002). "In other words,

---

[3] For example, Maureen Allen alleges harassment occurring from 1998 to 2000 (Complaint, paras. 32, 35, 39, 45, 49, 50, 55, & 57); Paulette Williams alleges harassment in 2000 and 2002 (Complaint, paras. 64 & 70); Sandra Gawron and Barbara Hawkins allege harassment in 2001 and 2002 (Complaint, para. 151); Tanjorie Godwin alleges harassment in 1996 (Complaint, paras. 201 & 205); Catherine Osten alleges harassment in 1994 and 1997 (Complaint, paras. 253, 254 & 255); Carol Newman alleges harassment in 1999 and 2001 (Complaint, paras. 273 & 289); Jane Doe 2 alleges harassment from 1995 to 1999 (Complaint, para. 313); Jane Doe 3 alleges harassment from 1990 to 1994, in 1995, 1996 and 2000 (Complaint, paras. 324 -348); and Gwendolyn Fuller-Lynch alleges harassment from 1995 to 1998, in 1999 and in 2000 (Complaint, paras. 358-379). The report of one of these incidents that was allegedly forwarded to Arpin was dated December 18, 2001; and the letter she failed to respond to "meaningfully" was dated Feqruary 15, 2001. (Complaint, paras. 90 & 93).

state employees may not be held personally liable for their negligent actions performed within the scope of their employment." Miller, 265 Conn. at 319.[4]

The plaintiffs acknowledge that Ms. Arpin was a State employee. (Complaint, para. 10.) Moreover, they specifically identify the Tenth Claim for Relief as "*Negligent* Infliction of Emotional Distress. (Complaint, p. 160.) Consistent with this characterization of Ms. Arpin's acts, none of the allegations specifically referencing her even hint of wanton, reckless or malicious conduct. (See Complaint.) In fact, the plaintiffs' allegations expressly contradict any conclusion that Ms. Arpin was acting outside the scope of their employment -- or wantonly, recklessly or maliciously.

As co-counsel has noted, for more than thirty years, the federal courts in this circuit have held that they lack jurisdiction over negligence claims asserted against employees of the State of Connecticut. Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969); Scittarelli v. Manson, 447 F. Supp. 279 (D. Conn. 1978); and specifically held that negligent infliction of emotional distress claims must be raised in the Connecticut claims commission pursuant to Conn. Gen. Stat. §4-165. Poe v. Pearl, 1997 U.S. LEXIS 23370 (D. Conn. 1997) (Nevas, J.), *rev'd on other grounds sub nom*, Poe v. Leonard, 282 F. 3d 123 (2d Cir. 2002). This court has dismissed negligence

---

[4] Instead, any person having a complaint for damage or injury caused by state employees in the discharge of their duties must present it to the Claims Commissioner as a claim *against the state*. Conn. Gen. Stat. §4-165; Miller, 265 Conn. at 319. The Connecticut Supreme Court has repeatedly acknowledged that there is no authority standing for the proposition that recourse to the claims commissioner is an inadequate remedy as a matter of law; and has rejected any implied assertions that the claims commissioner would not resolve fairly a dispute against the state. St. George v. Gordon, 264 Conn. 538, 553 (2003); Martinez v. Dept. of Public Safety, 263 Conn. 74, 86 (2003).

claims arising from a police investigation for the very same reason. <u>Cartier v. Lussier</u>, 1991 U.S.

Dist. LEXIS 14105 (D. Conn. 1991)(Nevas, J.); <u>see also</u> <u>Torrence v. Pelkey</u>, 164 F. Supp. 2d ,

264 (D. Conn. 2001)(Fitzsimmons, M.J.).

As the plaintiffs here have failed to allege that they have exhausted their remedies before

the claims commissioner or obtained his permission to sue, and have not pled any other waiver

of sovereign immunity, this Court has no jurisdiction over their negligence law claim.  For this

reason, and those set forth in the brief and reply brief of the co-defendants, the long-standing

precedents of this Court should be respected, and the plaintiffs' negligence claim against Ms.

Arpin should be dismissed.

## B. The Court Should Decline to Exercise Its Supplemental Jurisdiction over both State Tort Claims, the Claims of Negligent and Intentional Infliction of Emotional Distress.

Finally, the Court may decline to exercise supplemental jurisdiction over a claim if it has

dismissed all claims over which it has original jurisdiction.  28 U.S.C. §1367(c)(3); <u>see also</u>

<u>Purgess v. Sharrock</u>, 33 F.3d 134, 138 (2d Cir. 1994) (decision to dismiss state law claims  is

within the sound discretion of the district court).  "[I]n the usual case in which all federal-law

claims  are eliminated before trial, the balance of factors . . . will point toward declining to

exercise  jurisdiction over the remaining state-law  claims. " <u>Travelers Ins. Co. v. Keeling</u>, 996

F.2d 1485, 1490 (2d Cir.  1993); <u>see also</u> <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726-27,

16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966) (enumerating factors a district court should consider in

determining whether to exercise supplemental jurisdiction).

Because the Court in this case should dismiss all of the federal claims asserted against Ms. Arpin, it should also decline to exercise supplemental jurisdiction over the plaintiffs' state law claims and dismiss Counts Nine and Ten as against Ms. Arpin.

## V.  OTHER DEFENSES

Finally, to the extent the co-defendants' motion to dismiss memoranda addresses the plaintiffs' individual capacity claims, Ms. Arpin joins in their briefs and arguments.

## **<u>CONCLUSION</u>**

As the plaintiffs have failed to state any claim against Ms. Arpin over which the Court has jurisdiction or upon which relief may be granted, the defendant respectfully asks this Court to grant this motion to dismiss and the dismiss the entire complaint against her.

<div style="margin-left:40%;">

DEFENDANT VICKI ARPIN

BY:  RICHARD BLUMENTHAL
     ATTORNEY GENERAL

Linsley J. Barbato
Assistant Attorney General
Federal Bar No. ct 03751
55 Elm Street
P. O. Box 120
Hartford, CT 06141-0120
Telephone:  (860) 808-5160
Facsimile:  (860) 808-5384
E-mail:  linsley.barbato@po.state.ct.us

</div>

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed in accordance with Rule 5(b) of

the Federal Rules of Civil Procedure on this 18th day of December 2003, first class postage

prepaid to:

The Honorable Holly B. Fitzsimmons
Chambers
Brien McMahon Federal Building
District Of Connecticut
915 Lafayette Boulevard
Bridgeport, Connecticut 06604;

Antonio Ponvert, III
Koskoff, Koskoff & Bieder, P.C.
350 Fairfield Avenue
Bridgeport, CT 06604; and

David N. Rosen
Rosen & Dolan, P.C.
400 Orange Street
New Haven, CT 06511;

and hand-delivered to:

Margaret Chapple & Jane B. Emons
Assistant Attorneys General
Attorney General's Office
55 Elm Street – P.O. Box 120
Hartford, CT 06141-0120 and

Terrance M. O'Neill
Assistant Attorney General
Attorney General's Office
110 Sherman Street
Hartford, CT 06105

_____
Linsley J. Barbato
Assistant Attorney General