UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| MAUREEN ALLEN, ET AL. | : | |
| v. | : | CIV. NO. 3:02CV1370 (AHN) |
| JOHN J. ARMSTRONG, ET AL. | : | |

RECOMMENDED RULING ON DEFENDANTS' MOTION TO DISMISS **[DOC.#98]**

This is an employment discrimination action brought by
fourteen plaintiff-employees of the Connecticut Department of
Correction against the State of Connecticut and fifty-six
individually named defendants pursuant to 42 U.S.C. §§1983, 1985,
1986, 1988 and 42 U.S.C. §§2000 et seq.  Plaintiffs seek
declaratory and monetary relief.  Plaintiffs also bring common
law claims against the individual defendants for intentional and
negligent infliction of emotional distress.

Pending is defendants' Motion to Dismiss **[Doc. #98]** various
claims set forth in plaintiffs' Third Amended Complaint.[1] For the
reasons that follow, the motion is **GRANTED** in part and **DENIED** in
part.

_____

[1]The Third Amended Complaint was filed July 3, 2003, by
fourteen (14) plaintiffs against fifty-six (56) defendants
asserting ten claims for relief. The complaint is 164 pages in
length. [Doc. #92].

1

STANDARD OF LAW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. Spalding, 467 U.S. 69, 73 (1984). When deciding a motion to dismiss for failure to state a claim on which relief can be granted, the court must accept the material facts alleged in the complaint as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996).

The court must not dismiss the action "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." York v. Ass'n of the Bar of the City of New York, 286 F.3d 122 (2d Cir. 2002) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

For purposes of the motion to dismiss, the Court accepts the facts alleged in the Third Amended Complaint as true.

DISCUSSION

Pending is defendants[2]' motion to dismiss, pursuant to Fed. R. Civ. P. §§12(b)(1) and 12(b)(6), seeking dismissal on four grounds:

1.   As to defendants Hector Rodriguez, Michael Donahue, Remi Acosta, David Strange, Dennis Jones, James Dzurenda, Robert Gillis, John Tarascio, David Marcial, Giovanni Gomez, Nelvin Levester, Curtis Boyle, Christopher Dion, Peter Murphy, Anthony Lorenzano, Raymond Agrinzone and Richard Flodquist, the plaintiffs' 42 U.S.C. §§ 1983, 1985 and 1986 claims must be dismissed for failure to allege sufficient personal involvement;

2.   Plaintiffs' claims for negligent infliction of emotional distressed are barred by sovereign immunity;

3.   All plaintiffs, except Danielle Locas, have failed to exhaust their administrative remedies in order to pursue claims under Title VII; and

4.   Plaintiffs 'Title VII claims against individually named defendants fail to state a cause of action.

[Doc. #99 at 1-2].


1.   Failure to Allege Sufficient Personal Involvement

Seventeen defendants, Hector Rodriguez, Michael Donahue, Remi Acosta, David Strange, Dennis Jones, James Dzurenda, Robert Gillis, John Tarascio, David Marcial, Giovanni Gomez, Nelvin Levester, Curtis Boyle, Christopher Dion, Peter Murphy, Anthony Lorenzano, Raymond Agrinzone and Richard Flodquist, seek dismissal of Counts 2 through 6 for failure to allege direct involvement in any of the activities that form the basis of the

_____

[2]Other than defendants Vicki Arpin, Richard Matos, Neal Kearney, Dennis Dockery, Glen Holloway and John Doe One. [Doc. #98 at 1].

constitutional claims.[3] These seventeen defendants state that
"the complaint merely lists their names in the "parties"
sections, ¶¶6-23, for identification purposes only."   [Doc. #99
at 4]. Defendants contend, and plaintiffs agree,  that these
defendant are not mentioned by name any where else in the
complaint.  The seventeen defendants are all male lead wardens,
[Third Amend. Compl. ¶¶11-12], facility wardens, [¶¶13-14],  or
deputy wardens [¶¶15-16], and there are no allegations that any
of these defendants directly supervised the plaintiffs or the
employees/supervisees alleged to have harassed the plaintiffs.
Defendants argue that "the fact that the plaintiffs have failed
to connect any of the conduct of these seventeen men to their own
specific circumstances warrants dismissal of all claims against
these defendants." [Doc. #104 at 3].  Here, plaintiffs' Third
Amended Complaint alleges that the seventeen defendants, among
others,

> were responsible for administering,
> coordinating, supervising and controlling the
> operations of the Department's facilities,
> and were specifically responsible, either
> directly or in a supervisory capacity, for:
> (a) the supervision, training, discipline and
> control of persons working for the

---

[3]In Count Two of the Third Amended Complaint, plaintiffs
allege equal protection violations pursuant to 42 U.S.C. §1983.
[Third Amend. Compl. ¶¶503-08].  Count Three consists of a claim
of conspiracy to commit equal protection violations pursuant to
42 U.S.C. §1985. Count Four consists of a claim for failure to
protect plaintiffs from equal protection violations perpetrated
by others, pursuant to 42 U.S.C. §1983.  In Count Five,
plaintiffs bring a claim of conspiracy to fail to protect
plaintiffs from equal protection violations pursuant to 42 U.S.C.
§1985.  In Count Six, plaintiffs allege neglect to prevent
wrongs, pursuant to 42 U.S.C. §1986.

Department; (b) the establishment and
enforcement of policies and practices
concerning the fair and equal treatment of
Department employees; and (c) ensuring that
the Department is free from sexual harassment
and discrimination.

[Third Amend Compl. ¶¶ 11, 13, 15].[4]

Section 1983 provides a private right of
action against any person who, acting under
color of state law, causes another person to
be subjected to the deprivation of rights

---

[4]Defendant **Hector L. Rodriguez** was at relevant times Lead
Warden of the Cheshire Correctional Institution, the Manson Youth
Institution and the Webster Correctional Institution. [Third
Amend. Compl. ¶12]. Defendant **Michael J. Donahue** was at relevant
times the Lead Warden of the Bergin Correctional Institution, the
Bridgeport Correctional Center, the Brooklyn Correctional
Institution, the Garner Correctional Institution, the Hartford
Correctional Center and the New Haven Correctional Institution.
Id. at ¶12. Defendant **Remi Acosta** was at relevant times the
Facility Warden of the Enfield Correctional Institution. Id. at
¶14. Defendant **David N. Strange** was at relevant times the
Facility Warden of Robinson Correctional Institution. Id. at
¶14. Defendant **Dennis Jones** was at relevant times the Facility
Warden of the Willard-Cybulski Correctional Institution. Id. at
¶14. Defendant **James E. Dzurenda** was at relevant times the
Facility Warden of the Webster Correctional Institution. Id. at
¶14. Defendant **Robert J. Gillis** was at relevant times the
Facility Warden of the Gates Correctional Institution. Id. at
¶14. Defendant **John Tarascio** was at relevant times the Facility
Warden of the Bridgeport Correctional Center. Id. at ¶14.
Defendant **David Marcial** was at relevant times the Facility Warden
of the Brooklyn Correctional Institution. Id. at ¶14. Defendant
**Giovanni Gomez** was at relevant times the Facility Warden of the
Garner Correctional Institution. Id. at ¶14. Defendant **Nelvin
A. Levester** was at relevant times the Facility Warden of the
Hartford Correctional Center. Id. at ¶14. Defendants **Curtis A.
Boyle, Christopher A. Dion and Peter J. Murphy** were Deputy
Wardens at the Enfield Correctional Institution. Id. at ¶16.
Defendant **Anthony Lornzano** was the Deputy Warden of the Osborn
Correctional Institution. Id. at ¶16. Defendant **Raymond
Agrinzone** was the Deputy Warden of the Webster Correctional
Institution. Id. at ¶16. Defendant **Richard C. Flodquist** was the
Deputy Warden of the Bridgeport Correctional Center. Id. at ¶16.

under the Constitution or federal law. See 42
U.S.C. § 1983. Because Section 1983 imposes
liability only upon those who actually cause
a deprivation of rights, "personal
involvement of defendants in alleged
constitutional deprivations is a prerequisite
to an award of damages under §1983." Wright
v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)
(citation and internal quotation marks
omitted). For this reason, the doctrine of
respondeat superior cannot be used to
establish liability under Section 1983. See
Monell v. Department of Soc. Servs., 436 U.S.
658, 692-94 (1978); Wright, 21 F.3d at 501;
Johnson v. Glick, 481 F.2d 1028, 1034 (2d
Cir. 1973).

Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999); Poe v.

Leonard, 282 F.3d 123, 140 (2d Cir. 2002) ("A supervisor may not

be held liable under section 1983 merely because his subordinate

committed a constitutional tort."(emphasis added); Horowitz v.

Anker, 437 F. Supp. 495, 504 (E.D.N.Y. 1977) (Liability cannot be

founded on official position alone.). "Supervisors may be found

liable under Section 1983 for their own actions, but also, in

certain circumstances, for the actions of their subordinates."

Poe, 282 F.3d at 140.  Our Circuit Court "long recognized that

supervisors may be "personally involved" in the constitutional

torts of their supervisees if:

> (1) the defendant participated directly in
> the alleged constitutional violation, (2) the
> defendant, after being informed of the
> violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant
> created a policy or custom under which
> unconstitutional practices occurred, or
> allowed the continuance of such a policy or
> custom, (4) the defendant was grossly
> negligent in supervising subordinates who
> committed the wrongful acts, or (5) the
> defendant exhibited deliberate indifference

6

> to the rights of [plaintiffs] by failing to
> act on information indicating that
> unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (emphasis added)(citing Wright, 21 F.3d at 501); Williams v. Smith, 781 F.2d 319, 323-24 (2d Cir. 1986); Spencer v. Doe, 139 F.3d 107, 112 (2d Cir. 1998); Poe, 282 F.3d at 140 (a supervisor "may be found liable, if, in supervising a employee, he exhibited gross negligence or deliberate indifference to a high risk that the [subordinate] would violate an [employee's] constitutional rights, and [the Supervisor's] neglect caused [the subordinate] to violate [the employee's] rights.").

The liability of a supervisor under Section 1983 is thus analytically distinct from that of a subordinate who directly caused the unlawful condition or event. See Madrid v. Gomez, 889 F. Supp. 1146, 1249 (N.D. Cal. 1995) (holding that supervisors may be liable for "conduct of a completely different nature: abdicating their duty to supervise and monitor the use of force and deliberately permitting a pattern of excessive force to develop and persist.").

Plaintiffs assert, and the Court agrees, that "specific knowledge" of sexual harassment has been adequately set forth in the Third Amended Complaint, even though the seventeen defendants were not mentioned specifically by name in the allegations. See e.g. Third Amend. Compl. ¶¶397, 399, 405, 469, 516. In addition to allegations supporting "direct knowledge" of harassing, retaliatory and discriminatory acts committed by other employees

at the DOC, plaintiffs also allege that defendants "personally"
engaged in such acts.  See e.g. Id. at ¶¶462, 464.

As set forth above, "supervisory liability may be imposed
when an official has actual or constructive notice of
unconstitutional practices and demonstrates 'gross negligence' or
'deliberate indifference' by failing to act." Meriwether v.
Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989); Poe, 282 F.3d at
140.  Plaintiffs correctly state that "[w]hile [] actual
knowledge may be a requirement of the "direct participation" test
for supervisory liability under Section 1983, it is not required
for the "gross negligence" or "deliberate indifference" tests.
See Provost v. City of Newburgh, 262 F.3d 146, 156 (2d Cir. 2001)
(supervisor may be found "grossly negligent" in supervising or
"deliberately indifferent" if he "knew or should have known" of
the underlying facts); Meriwether, 879 F.2d at 1048 (in imposing
liability the Court found supervisor "should have known").

In reply, defendants assert that plaintiffs' "absurdly
conclusory paragraphs" fail to allege that the misconduct
identified "was the proximate cause of the harm ostensibly
suffered by each plaintiff." [Doc. #104 at 2].  In Paton v.
LaPrade, the Court identified "several methods to create the
requisite causal connection between a supervisor and his
subordinates."

> The greater the duty a supervisor has to
> control those employees who actually
> committed the violation, the less specific
> knowledge of the offending conduct the
> supervisor will be required to have.  The
> existence of general policies and practices

within an organization can create a
Constructive knowledge on the part of the
supervisor of the alleged constitutional
deprivations.

. . .


a jury Could find the individual
[supervisors] liable, not on the theory that
these supervisory officials may be held
responsible for the acts of agents which were
negligent or contrary to instructions, but
rather on the theory that it was the
[supervisors'] Own conduct which resulted in
the constitutional violations. It is not
necessary for §1983 liability that the
[supervisors] directed any particular action
with respect to these specific individuals,
only that they Affirmatively promoted a
policy which sanctioned the type of action
which caused the violations. In short this is
not a case of indifference, that is, a
failure to act in the face of misconduct by
subordinates, but is rather a case of
affirmative policy-making which may have
caused the misconduct. Causation can be
established from the fact that the
subordinate's action is an implementation of
the policies or practices endorsed by the
supervisor.

471 F. Supp. 166, 169 (D.N.J. 1979) (emphasis in original and

citations omitted).  Here, the Third Amended Complaint clearly

contains allegations that the seventeen defendants were

"specifically responsible either directly or in a supervisory

capacity, for: (a) the supervision, training, discipline and

control of persons working for the Department; (b) the

establishment and enforcement of policies and practices

concerning the fair and equal treatment of Department employees;

and (c) ensuring that the Department is free from sexual

harassment and discrimination."  Third Amend. Compl. ¶¶ 13, 15,

9

17.  Here, "direct knowledge" is clearly alleged, see Id. at ¶¶
397, 399, 405, 469, 516, as well as, "personal engagement" and
"specific knowledge of facts" putting each defendant on notice of
the constitutional violation. See Id. at ¶¶ 462, 464.  Finally,
the allegations precisely track the legal standard for
supervisory liability.  see Id. at ¶496; Colon v. Coughlin, 58
F.3d 865, 873 (2d Cir. 1995).

Accordingly, the Motion to Dismiss the §1983 claims set
forth in the Second and Fourth Claims for Relief is **DENIED.**

Similarly, there is no requirement in either Section 1985 or
Section 1986 of specific knowledge or personal involvement,
particularly at the pleading stage.[5]  Defendants cite no

---

[5]     The four elements of a section 1985(3) claim
        are: (1) a conspiracy; (2) for the purpose of
        depriving, either directly or indirectly, any
        person or class of persons of equal
        protection of the laws, or of equal
        privileges and immunities under the laws; (3)
        an act in furtherance of the conspiracy; (4)
        whereby a person is either injured in his
        person or property or deprived of any right
        of a citizen of the United States....
        Furthermore, the conspiracy must also be
        motivated by some racial or perhaps otherwise
        class based, invidious discriminatory animus
        behind the conspirators' actions.

        . . . .

        Section 1986 "provides a cause of action
        against anyone who having knowledge that any
        of the wrongs conspired to be done and
        mentioned in section 1985 are about to be
        committed and having power to prevent or aid,
        neglects to do so."

Jones v. City of Bridgeport, No. Civ. 3:99CV1523(CFD), 2002 WL
272397 (D. Conn. Feb. 19, 2002) (citing and quoting Mian v.

authority in support of their motion to dismiss. Plaintiffs correctly state that the "Complaint need not allege each defendant's 'specific knowledge of facts' putting them on notice of the constitutional violations in order to properly plead the conspiracy claims." [Doc. #100 at 8].

For the reasons stated, the motion to dismiss the Section 1985 and Section 1986 claims set forth in the Third, Fifth and Sixth Claim for Relief is **DENIED.**


2.  Negligent Infliction of Emotional Distress

Defendants seek dismissal of plaintiffs' negligent infliction of emotional distress claims against all the individual defendants in their individual capacities,[6] arguing that Conn. Gen. Stat. § 4-156 expressly grants state officers and employees immunity from liability for negligent conduct.[7]

---

Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087 (2d Cir. 1993)).  These are the precise allegations in the Third Amended Complaint, Third, Fifth and Sixth Claims for Relief. Third Amend. Compl. ¶¶ 509-514; 522-527; 528-533.

[6]The Court notes that defendants also seek dismissal against the defendants in their official capacity but plaintiffs are not making an official capacity claim.  Third. Amend. Compl. Tenth Claim for Relief ¶¶551-555; Doc. #100 n.2.

[7]Conn. Gen. Stat. §4-165. Immunity of state officers and employees from personal liability

No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment. Any person having a complaint for such damage or injury shall present it as a claim against the state under the provisions of this chapter. . . .

11

<u>Barstow v. Shea</u>, 196 F. Supp. 2d 141, 151 (D. Conn. 2002).

> State officials and employees who are sued in
> their individual capacities possess a limited
> immunity from suit pursuant to Conn. Gen.
> Stat. §4-165. Under this statute, state
> officials and employees are personally liable
> only for "wanton, reckless or malicious acts"
> which include intentional torts. The statute
> does, however, afford immunity for negligence
> claims.
> . . . .
> This does not, however, leave the plaintiff
> without a remedy for the officer's alleged
> negligence.  An individual having a liability
> claim for which a state employee is immune
> pursuant to §4-165 may present it as a claim
> against the state to the claims commissioner.

<u>Poe v. Pearl</u>, Civ. No. 3:94CV2058(AHN), 1997 WL 76576, *8 (D.

Conn. Jan. 29, 1997) (citations omitted); <u>Torrence v. Pelkey</u>, 164

F. Supp. 2d 264, 271-72 (D. Conn. 2001).

    Plaintiffs argue that "[i]nasmuch as the defendants' acts

and omissions underlying the claim for negligent infliction of

emotional distress, and the damages and injuries resulting there

from, were not "caused in the discharge of [the defendants']

duties or within the scope of [their] employment" (Conn. Gen.

Stat. §4-165), the defendants are not statutorily immune from

personal liability on that claim, and their motion to dismiss

must be denied." [Doc. #100 at 15].  Plaintiffs rely on <u>Flanagan

v. Blumenthal</u>, and cases cited therein by Justice Katz in her

concurring opinion.  At issue in <u>Flanagan</u> was the Attorney

General's decision not to defend and indemnify the plaintiff, a

former Superior Court Judge, who sought reimbursement pursuant to

Conn. Gen. Stat. §5-141d for legal fees and expenses he incurred

while defending a civil rights action filed against him by another state employee. 265 Conn. 350, 352-53 (2003).

Plaintiffs argue that since the Court in Flanagan found that a "consensual sexual relationship" . . . falls outside the "scope of employment for the purposes of determining a State employee's personal liability for damages on a negligence claim, [then] non consensual and unwelcome negligent acts of sexual harassment, such as those alleged in the Third Amended Complaint, fall outside the scope of employment." [Doc. #100 at 13].

"The dispositive issue [in Flanagan was] whether the trial court improperly determined that §5-141d constitutes a waiver by the state of its sovereign immunity." 265 Conn. at 352-53. The Flanagan Court concluded, "pursuant to [their] recent holding in St. George v. Gordon, 264 Conn. 538, 551 (2003), that §5-141d waives the state's immunity from liability but does not waive the state's immunity from suit." Id.

Defendants correctly state that "plaintiffs fail to acknowledge that, under Connecticut law, there is a distinction between immunity from suit and immunity from liability, . . . the mere fact that a statute waives the state's immunity from liability does not, as a matter of course, waive the state's immunity from suit." [Doc. #104 at 4]. The explanation by the Court in St. George is instructive.

> There is, of course, a distinction between
> sovereign immunity from suit and sovereign
> immunity from liability.  Legislative waiver
> of a state's suit immunity merely establishes
> a remedy by which a claimant may enforce a
> valid claim against the state and subjects

the state to the jurisdiction of the court.
By waiving its immunity from liability,
however, the state concedes responsibility
for wrongs attributable to it and accepts
liability in favor of the claimant.

264 Conn. at 550. The Supreme Court in Flanagan concluded again

that Conn. Gen. Stat. §5-141d, did not waive the state's

sovereign immunity from suit. 265 Conn. at 358.  Here, as in St.

George, the Court finds that sovereign immunity is not waived and

that plaintiffs' negligence claim can be pursued "only by the

filing of a claim with the claims commissioner, and not by filing

suit."[8]  264 Conn. at 550,  (citing, Martinez v. Dept. of Public

Safety, 263 Conn. 74, 85).

     Here, the state has waived its immunity for the negligent

acts of its employees, while at the same time limiting the manner

in which such claims maybe asserted by requiring plaintiffs to

file an administrative complaint in the claims commission.  St.

George, 264 Conn. at 550; Martinez v. Dept. of Public Safety, 263

Conn. at 85.  The Court agrees with defendants that "the

authority of the Attorney General, pursuant to §5-141d, to

determine [whether] representation and indemnification of a state

employee is 'inappropiate' . . ." is clearly distinguishable from

§4-165. [Doc. #104 at 5]. "At no point do these two statutes

---

     [8]In Flanagan, the Supreme Court did not reach the question
of whether an employee who is refused defense and indemnification
by the Attorney General may bring a claim in the claims
commission.  See Flanagan, 265 Conn. At 358, n. 11 (declining to
rule on defendants' argument "that the indemnification of a state
employee pursuant to §5-141d rests within the sole discretion of
the attorney general, and that, therefore, the plaintiff may not
even apply to the claims commissioner for relief.").

14

intersect, since the consequence of a grant of permission to sue for the negligence of a state employee allows solely for the bringing of an action 'against the state as party defendant' which may only be brought in the superior court. <u>See</u> Conn. Gen. Stat. §4-160(d). Because the state is the only party to a negligence claim properly presented to the claims commissioner, the Attorney General would never face the decision whether it would be "appropriate" to represent a state employee in such an action." [Doc. #104 at 5-6].

Accordingly, the Motion to Dismiss plaintiffs' claim of negligent infliction of emotional distress is properly **GRANTED.**

### 3.   <u>Title VII Requirements: "Single Filing" Rule</u>

Defendants move to dismiss the Title VII claim on the grounds that plaintiffs, with the exception of Danielle Locas, failed to file a charge of discrimination with the EEOC prior to bringing this lawsuit. [Doc. #99 at 10].  Plaintiffs oppose the motion, stating that even though thirteen (13) plaintiffs in this case did not file charges with the EEOC, the single filing rule allows them to "piggyback"  their claims onto the charges filed by Danielle Locas.  Plaintiffs bring this action "on behalf of themselves and all persons similarly situated" and seek an order certifying the classes.  Third Amend. Compl. at ¶6, Prayer for Relief.

It is well established that

When a plaintiff fails to file a timely

15

charge with the EEOC, the claim is
time-barred. In states such as [Connecticut]
that have an agency with the authority to
address charges of discriminatory employment
practices, the statute of limitations for
filing a charge of discrimination with the
EEOC is 300 days. 42 U.S.C. § 2000e-5(e).
. . . .

A district court only has jurisdiction to
hear Title VII claims that either are
included in an EEOC charge or are based on
conduct subsequent to the EEOC charge which
is "reasonably related" to that alleged in
the EEOC charge. This exhaustion requirement
is an essential element of Title VII's
statutory scheme . . . . [T]he purpose of the
notice provision, which is to encourage
settlement of discrimination disputes through
conciliation and voluntary compliance, would
be defeated if a complainant could litigate a
claim not previously presented to and
investigated by the EEOC."

Butts v. City of New York Dep't. of Housing Preservation and
Dev., 990 F.2d 1397, 1401 (2d Cir. 1993) (multiple citations and
quotation marks omitted).

An exception to Title VII's time limitations is the single
filing rule.  "The single filing rule provides that where one
plaintiff has filed a timely charge of discrimination with the
appropriate administrative agency, other non-filing plaintiffs
may join in a later action in federal court if their individual
claims arise out of similar discriminatory treatment in the same
time frame." Levy v. United States Gen. Accounting Office, No. 97
Civ. 4016, 97 Civ. 4488, 1998 WL 193191, at *2 (S.D.N.Y. Apr. 22,
1998), aff'd, 175 F.3d 254 (2d Cir. 1999); see Snell v. Suffolk
County, 782 F.2d 1094, 1100 (2d Cir. 1986). In Tolliver v. Xerox
Corp., the Second Circuit held that in addition to allowing

non-filing plaintiffs to opt into an existing action, the single
filing rule allowed non-filing plaintiffs to file their own
individual actions when they had attempted to opt into a class
action brought by filing plaintiffs, but the class had later been
decertified. 918 F.2d 1052 (2d Cir. 1990). The filing plaintiff's
charge, however, must have contained "some indication that the
grievance affects a group of individuals defined broadly enough
to include those who seek to piggyback on the claim." Id. at
1058; Clark v. United Technologies Corp., No. Civ. A.
3:97CV0438(GLG), 1997 WL 573431, *3 (D. Conn. Sept. 3, 1997)
(finding single filing requirements met where the initial EEOC
charge was filed on behalf of himself and all other similarly
situated employees and after receiving notice from the EEOC
regarding his charge he timely filed a civil action). "Such a
claim alerts the EEOC that more is alleged than an isolated act
of discrimination and affords sufficient notice to the employer
to explore conciliation with the affected group." Id. "The
rationale for this rule is to avoid needless repetition in the
filing of administrative charges when the initial claim was
sufficient to put the employer on notice of the alleged
violations and afford the employer an opportunity for
conciliation with the aggrieved employees." Levy, 1998 WL 193191,
at *2.

The Third Amended Complaint contains the following
jurisdictional allegations.

¶540.  On July 1, 2002, plaintiff DANIELLE
LOCAS filed with the CHRO and the EEOC a

17

Complaint/Affidavit of Illegal Discriminatory
Practice, alleging that she and other female
correctional officers had been sexually
harassed and discriminated against in the
terms and conditions of their employment at
the DEPARTMENT OF CORRECTION, and that she
had been retaliated against due to her filing
of a prior CHRO complaint concerning sexual
harassment, in violation of Title VII.  The
matter was assigned CHRO Case No. 034002 and
EEOC Case No. 16aa201536.

¶541.  On March 17, 2003, the CHRO issued a
Release of Jurisdiction (a "Right to Sue
Letter") for both the CHRO and the EEOC case
numbers, stating that "all conditions
precedent to the issuance of the release of
jurisdiction have been complied with."  In
accordance with the EEOC's Procedural
Regulations and its work sharing agreements
with the CHRO, the CHRO Release of
Jurisdiction was automatically adopted by the
EEOC.

¶542.  This civil action is brought within 90
days of MS. LOCAS' receipt of the Release of
Jurisdiction and within two years of the date
of the filing of her complaint with the
CHRO/EEOC.

The Complaint was filed on August 8, 2002. [Doc. #1].  Defendants

do not challenge the sufficiency of Ms. Locas' filings with the

EEOC and the district court.

The Court in <u>Snell</u> observed that "the statutory time limit

for filing charges is not a jurisdictional prerequisite to a

Title VII suit in district court. Rather, the [Supreme] Court

analogized the filing requirement to a statute of limitations,

which could be waived or tolled where deemed equitable by the

district court." 782 F.2d at 1101 (citing, <u>Zipes v. Trans World</u>

<u>Airlines, Inc.</u>, 455 U.S. 385, 398 (1982). The principle function

of the filing requirement is to provide notice and an opportunity

18

for conciliation. Id. (citing, Zipes, 455 U.S. at 398, and Foster v. Gueory, 655 F.2d 1319, 1323 (D.C. Cir. 1981)). "Where two plaintiffs allege that they were similarly situated and received the same discriminatory treatment, the purposes of the exhaustion requirement are adequately served if one plaintiff has filed an EEOC complaint." Id. (quoting De Medina v. Reinhardt, 686 F.2d 997, 1013 (D.C. Cir. 1982)).

Here, Danielle Locas' EEOC complaint and the claims of the other thirteen plaintiffs "arise out of similar discriminatory treatment in the same time frame". Id. at 1100 (Quotation marks and citation omitted). Ms. Locas' Affidavit of Illegal Discriminatory Practice, filed with the CHRO and the EEOC on July 1, 2002, alleges in part, "I was sexually harassed/discriminated against in the terms and conditions of my employment/retaliated beginning January 14, 2002 and continuing until March 2, 2002 and believe that my sex female, and previously filed CHRO Complaint was/were in part a factor in this action." [Doc. #100, Ex. B at 1]. The Third Amended Complaint alleges class-wide harassment and discrimination in the January through August 2002 time frame.

Locas' CHRO/EEOC Affidavit further alleges that DOC officials retaliated against her by routinely moving her from her assigned post (Doc. #100, Ex. B ¶¶12-13, 15, 29); discriminated against her and sexually harassed her by depriving her of adequate bathroom facilities (id. at ¶¶16-24); failed to respond to her repeated complaints about sexual harassment, violated the Department's anti-harassment policies, and created an

19

"intimidating, hostile and offensive working environment (id. at
¶26)." Locas' September 15, 2002 CHRO/EEOC Rebuttal also alleges
that the Department's Affirmative Action Unit failed to contact
her, to investigate her claims, or to assist her in any
meaningful way with her complaints.  See Doc. #100, Ex. C. at 4.
Her allegations mirror the allegations set forth in the Third
Amended Complaint.  See Third Amend. Compl. ¶¶462-468
(retaliation by moving female employees); ¶¶151-154, 465(j), 472
(denial of adequate bathroom facilities); ¶¶429-461, 487-493
(failure of administration to respond to complaints); ¶¶409-428
(failure of Affirmative Action Unit to respond to complaints);
¶¶429-461 (violation of DOC anti-harassment policies); ¶¶469-478
(creation of hostile and offensive environment).

     Ms. Locas' CHRO/EEOC Affidavit complained not only of
harassment and discrimination adversely affecting her own
employment at the Department, but it also complained about the
effect of the respondents' discriminatory practices and policies
on "other female correction officers."  See Id. ¶27
("Respondent's failure to provide a port o potty so that I and
**other female correction officers** can use the bathroom while on
patrol in the perimeter constitutes discrimination in the terms
and conditions of employment."); ¶28 ("While Respondent's male
employees may be able to urinate behind the water tower with
facility and without personal humiliation, **subjecting female
corrections officers** to such treatment constitutes discrimination

20

based on sex."); Ex. B, Addendum at 6 ("Although the inmates sexually harass **us**, the administration should not condone this action by not responding to it. This still constitutes as sexual harassment on the part of the administration for allowing it to happen . . . . The conduct has the purpose or effect of substantially interfering with **an individual's** work performance or creating an intimidating, hostile or offensive working environment.") (emphasis added).

This record clearly alleges "similar discriminatory treatment in the same time frame," and supports plaintiffs' claim that the exhaustion requirement as to all of them was met by Ms. Locas' filing. Snell, 782 F.2d at 1100; Tolliver v. Xerox, 918 F.2d 1052, 1056 (2d Cir. 1990)("In Title VII suits, the "single filing rule" is not limited to class actions but also permits aggrieved plaintiffs to join in a lawsuit brought by individuals who have filed a timely administrative charge provided the claims 'arise out of similar discriminatory treatment in the same time frame.'")(citing Snell, multiple citations omitted).

During the course of its investigation and conciliation efforts with Ms. Locas, the CHRO conducted intensive hearings into allegations of class-wide and pervasive sexual harassment at the Department of Corrections.[9]  Indeed, plaintiffs Locas,[10]

_____

[9]The CHRO Report may be found at the CHRO website, www.state.ct.us/chro/metapages/whatsnew

[10]See The CHRO Report at 39, testifying about her removal and/or transfer from cellblocks for enforcing administrative directives; and retaliation for taking bathroom breaks.

Hawkins,[11] Godwin,[12] Osten,[13] Gawron[14] and Stanley[15] testified at the Labor and Public Employees Committee's public meetings held on June 3 and June 10, 2002 regarding the conditions of their employment. Their testimony is summarized in the CHRO's Report. See The CHRO Fact-Finding Report into Allegations of Sexual Harassment within the Department of Corrections, www.state.ct.us/chro/metapages/whatsnew at 31-41 (Feb. 2003)[16] ("CHRO Report").  The Department of Corrections was undoubtedly on notice during the legislative and administrative public

---

[11]See The CHRO Report at 34, testifying about the difficulty for women to obtain bathroom breaks.

[12]See The CHRO Report at 39-40, testifying about verbal and physical harassment, transfers, reports of harassment unresponded to by the Department.

[13]See The CHRO Report at 36, testifying about women subjected to involuntary transfer or forced retirement, stating that she "watched women being assaulted, forced into relationships, and subjected to unwarranted attacks on their personal lives and reputations," and that "other victims who complained were involuntarily transferred, demoted or completely isolated."

[14]See The CHRO Report at 41, detailing some of the harassing incidents, failure by the AAU to investigate her complaint],

[15]See The CHRO Report at 41, testifying about verbal harassment, and that her supervisor refused to file her report or to move an inmate.

[16]Plaintiffs further argue, and the Court agrees, that "[t]he fact that the Orr plaintiffs, and a number of other female DOC employees, filed sexual harassment charges with the CHRO should alone suffice to satisfy the "single filing rule, " even if Ms. Locas had filed no charge at all. Cf. Tolliver, 918 F.2d at 1057 (In a ADEA action, "[t]he purpose of the charge filing requirement is fully served by the administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance elect to join a preexisting suit or initiate their own.").

hearings in June and September 2002, and before and after the publication of the CHRO's Report in February 2003, that other female employees at the Department had complaints similar or identical to those lodged by Ms. Locas.[17]  "The purpose of the administrative charge requirement is to afford the agency the opportunity to 'seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." Tolliver, 918 F.2d at 1057 (quoting 29 U.S.C. §626(d)). Defendants cannot seriously argue that they were denied notice and an opportunity for conciliation. Snell, 782 F.2d at 1101 (multiple citations omitted).

Finally, defendants argue that "the plaintiffs have failed to demonstrate that each could have brought her own timely administrative charge.  A review of the plaintiffs' complaint establishes that four of the plaintiffs (Allen, Godwin, Newman, and Jane Doe One) experienced allegedly harassing behavior that terminated more than 300 days prior to the filing of the one administrative charge on July 1, 2002." [Doc. #104 at 9].  The Court finds this argument premature and more appropriately raised on summary judgment.  In addition to the allegations specific to the individual plaintiffs, the Third Amended Complaint contains generalized allegations of harassment affecting all of the female correctional staff within the 300 days of the CARO/EEOC complaint

---

[17]Other female correctional officers testified at the Labor and Public Employees Committee Public Meetings on June 3 and 10, 2002. Their testimony is also summarized in the CHRO Report at 31-41.

that, if true, warrant continuation of the complaints by Allen, Godwin, Newman, and Jane Doe One.  See Third Amend. Compl. at ¶¶393-408 ("Other representative incidents of sexual harassment at the Department of Corrections); ¶¶409-28 ("The Affirmative Action Unit and the Human Resources Unit, with the knowledge and consent of the Defendants,  intentionally failed and refused to prevent or punish sexual harassment at the Department); ¶¶429-61 ("The Defendants intentionally failed and refused to prevent or punish sexual harassment at the Department"); ¶¶462-68 ("Retaliation and Intimidation"); ¶¶469-78 ("Sexual Harassment at the Department was pervasive"); ¶¶479-86 ("Sexual harassment at the highest levels"); ¶¶487-99 ("The Code of Silence and the Cover Up").[18]

Accordingly, after careful review, the Court holds that the "single filing rule" applies to the thirteen plaintiffs and defendants' motion to dismiss based on the failure to file an

---

[18] With regard to the specific allegations of plaintiffs Allen, Godwin, Newman, and Jane Doe One, the Court notes that the "continuing violation exception" to the general 300 day limitation period provides that if a plaintiff "files a timely EEOC charge about a particular discriminatory act committed in furtherance of an ongoing policy of discrimination," the statute of limitations is extended "for all claims of discriminatory acts committed under that policy." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997); see Harris v. City of New York, 186 F.3d 243, 248-50 (2d Cir. 1999).  To invoke the doctrine, a plaintiff must show either (1) "specific ongoing discriminatory policies or practices," or (2) "specific and related instances of discrimination [that] are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 766 (2d Cir. 1998) (quoting Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994).

administrative claim is **DENIED**.

### 4.    Title VII: Official Capacity Suit

Defendants argue that the Title VII claims against the individual defendants in their official capacities should be dismissed.  Plaintiffs allege that "[t]he INDIVIDUAL DEFENDANTS are "employers" within the meaning of 42 U.S.C. §2000e(b) by virtue of their status as "agents" of the CONNECTICUT DEPARTMENT OF CORRECTION."[19]  Third Amend. Compl. ¶537 (emphasis in original).

Defendants first argue that "[i]ndividual defendants, even those with supervisory control over a plaintiff, may not be held personally liable under Title VII." [Doc. #99 at 12 (citing Tomka v. Seiler Corp., 66 F.3d 1295, 1313 (2d Cir. 1995)]. Plaintiffs do not dispute this.

Defendants next argue that "Title VII claims are not permitted against such individuals even in their official capacities when the employer itself is amenable to suit."  Id. (citing Brooks v. Hevesi, 95-CV-3209, 1998 WL 32712, *1 (S.D.N.Y. Jan.29, 1998)).  Here, plaintiffs are suing the Connecticut Department of Correction.

"The Second Circuit has not addressed the specific issue of

---

[19]"The term 'employer' means a person engaged in an industry affecting commerce . . . and any agent of such a person."  42 U.S.C. §2000e(b).

whether a plaintiff may assert a Title VII claim against an individual supervisor in his or her official capacity." McBride v. Routh, 51 F. Supp. 2d 153, 156 (D. Conn. 1999) (collecting cases); see Hafez v. Avis Rent A Car System, Inc., 242 F.3d 365, *2 (2d. Cir. 2000) (unpublished) ("We need not decide whether Title VII encompasses a claim against an individual employee in his official capacity because an alternative ground exists to support the district court's denial of leave to amend."). "Courts in this district, however, have rejected such claims." Miner v. Town of Cheshire, 126 F. Supp. 2d 184, 200 (D. Conn. 2000); McBride, 51 F. Supp. 2d at 156-57; Schaffer v. Ames Department Stores, Inc., 889 F. Supp. 41, 43-46 (D. Conn. 1995). "Other district courts within this Circuit have reached conflicting results, although the recent trend in Title VII cases has been to disallow official capacity claims against non-employer individuals." Miner, 126 F. Supp. 2d at 200 (citing McBride, 51 F. Supp. 2d at 156-57 (collecting cases)); see also Daniels v. Alvarado, No. 03CV5832, 2004 WL 50561, *4 (E.D.N.Y. Mar. 12, 2004); Seils v. Rochester City School District, 192 F. Supp. 2d 100, 124 (W.D.N.Y. 2002) (collecting cases); Bliss v. Rochester City School District, 196 F. Supp. 2d 314, 339 (W.D.N.Y. 2000) (citing Seils and collected cases); Smith v. New York City Bd. of Educ., 96-CV-3486, 2000 WL 64873, *4 (S.D.N.Y. Jan. 25, 2000).

This Court is persuaded by the cases disallowing official capacity claims against individual defendants.  "Tomka and the language of Title VII compel a holding that only employer-entities have liability under Title VII." Miner 126 F. Supp. 2d

26

at 200.  Thus, defendants' motion to dismiss the Seventh and Eighth claims for relief against the individual defendants is **GRANTED**.

CONCLUSION

For the reasons stated, defendants' Motion to Dismiss **[Doc. #98]** is **GRANTED** in part and **DENIED** in part in accordance with this ruling.

Any objections to this recommended ruling must be filed with the Clerk of the Court within ten (10) days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

ENTERED at Bridgeport this 9th day of September 2004.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE